**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Jermaine JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 4, 2004.
Filed April 28, 2004.

Andrew G. Gay, Philadelphia, for appellant.

George M. Green, Asst. Dist. Atty., Media, for Com., appellee.

Before: KLEIN, McCAFFERY and OLSZEWSKI, JJ.

KLEIN, J.

¶ 1 Jermaine Johnson appeals from his mandatory sentence of two to four years for Possession With Intent to Deliver marijuana. He claims the trial court erred in denying his motion to suppress evidence. He argues that the police first should have obtained an anticipatory search warrant. Whether or not that might have been possible, since we find this was an investigatory stop and not an arrest, is irrelevant. His second argument is that this was an arrest rather than an investigatory stop, essentially because the officers drew their guns before approaching the car of a suspected drug dealer. Here the police were

approaching a car with reasonable suspicion that a significant drug crime was being committed, as opposed to just making a routine traffic stop. Therefore, not only was it proper for them to draw their weapons, but it would have been imprudent and dangerous *not* to draw their weapons, considering the danger that can result from approaching the car of a suspected drug dealer. Accordingly, we affirm.

¶ 2 On the date of the arrest, October 2, 2002, Officer DeFrancesco received information from a confidential informant (C.I.) that a young, stocky, African–American male would be delivering marijuana in a blue Oldsmobile on the 6700 block of Market Street in Upper Darby, PA. Later, Officer DeFrancesco received more information from the C.I. stating that the time of delivery would be between 6:00 and 10:00 p.m. The information was received shortly before 6:00 p.m., and five officers immediately set up a surveillance. A man fitting the description in a car fitting the description arrived in the location. The officers approached the car, with their guns drawn but at their sides. One officer saw a bag of marijuana in the back seat and another smelled marijuana through a partly opened car window. Johnson was arrested at this time. The drugs and drug paraphernalia were found in the car and, during an inventory search, a handgun was found.

## I. Complaint that the Police Failed to Obtain an Anticipatory Search Warrant

¶ 3 Johnson first claims that an "anticipatory search warrant" should have been obtained prior to the action by the police officers. This argument fails. Whether or not an anticipatory warrant could have been obtained, if the police had reasonable suspicion to make an investigatory stop, and the drugs were in plain view justifying the later action, it does not matter whether or not they had a warrant or could have obtained a warrant.

¶ 4 This issue was thoroughly discussed in the well-thought out opinion of the trial judge, the Honorable George Koudelis. He said:

> Appellant alleges that the Upper Darby Police had at least three hours, or it may have been as much as forty-eight (48) hours, in which they could have obtained an anticipatory search warrant. Appellant calculated the three to forty-eight (3–48) hours from the time the CI provided the information until the police arrived on the location of Market Street and encountered Appellant. The difference in time was reflected by the fact that the Affidavit of Probable Cause attached to the criminal complaint states that the police had been in contact with the CI at least forty-eight (48) hours before the arrest; however, during the Suppression Hearing Officer DiFrancesco was unclear and unsure about the time frame. Regardless of the time discrepancy, it is clear from the record that the Officers had a description of Appellant as a stocky young black male, possibly driving a blue or teal Oldsmobile, there was no testimony presented during the Suppression Hearing regarding a possible nickname; however, the Affidavit reflects a possible nickname of Jaraw.

The Supreme Court has held that an anticipatory search warrant is not *per se* violative of Article I, Section 8. *Commonwealth v. Glass*, [562 Pa. 187] 754 A.2d 655, 656 (Pa.2000) (quoting *Commonwealth v. Glass*, 718 A.2d 804, 806 (Pa.Super.1998)). In *Glass*, the Supreme Court stated that when a magistrate is considering whether probable cause exists for the issuance of anticipatory search warrant, he or she may rely on information in an affidavit concerning future events "[s]o long as [the] factual averments [are] reliable and probative of the likelihood that evidence will be found

where and when the warrant is to be executed..." *Id.* at 664. In accordance with *Glass*, the issuance of an anticipatory search warrant must be based on finding of probable cause at the time the warrant is authorized. Probable cause in this instance may be established by information regarding future events, so long as there is a fair probability that the future events will transpire.

The probability of the anticipated transaction occurring in the case *sub judice* was established by averments of the CI to Officer DiFrancesco within hours of the arrest of Appellant. During the Suppression Hearing there was no testimony from the police that would conclusively indicate that the transaction would ever occur. The Superior Court has held that "a warrant cannot properly be issued based upon mere speculation that a crime might occur at some future time." *Commonwealth v. Reviera*, [387 Pa.Super. 196] 563 A.2d 1252, 1255 (Pa.Super.1989). At most the police would have had one (1) hour in which they specifically knew that Appellant would be in the 6700 block of Market Street. The mere fact that the CI may have provided information as early as forty-eight (48) hours before the arrest that Appellant was going to be in the area at some point and *possibly* in an Oldsmobile does not establish probable cause. Officer DiFrancesco testified that the CI presented information around 5 p.m. that Appellant was going to be in the area between 6 and 10 p.m. on October 2, 2002. The Affidavit of Probable Cause attached to the criminal complaint, which was written after the arrest of Appellant, and the testimony of Officer DiFrancesco does not establish that the Upper Darby Police had sufficient information to establish by a fair probability that the anticipated events would occur. Therefore, because the information regarding these likely future

events did not satisfy the "specificity and reliability strictures attending all probable cause evaluations [,]" the Upper Darby Police did not and should not have applied to a magistrate for an anticipatory search warrant. This case differs drastically from the circumstances in *Glass* where the Supreme Court stated that "[t]he necessary pieces were in motion and all but inevitably the pieces would fall into a set, at a later time, constituting a crime." *Glass*, 754 A.2d at 664 n. Rather, in this case the Upper Darby Police were proceeding upon information regarding an isolated drug transaction and were speculating that they would find the drugs on Appellant's person, as they had information that he was someone who delivered cocaine and marijuana to persons in Delaware County.

Trial Ct. Op., pp. 4–6.

## II. Complaint That This Was an Arrest Rather Than Investigatory Detention.

¶ 5 Further, Defendant claims he was arrested when concededly there was no probable cause for an arrest. This argument also fails. Under all the circumstances, we agree with the trial judge's characterization of what happened as an investigative detention rather than an arrest. We also conclude that based on the information given by a C.I. who had proven to be reliable in the past, when a man fitting the description arrived at the appointed location in a car similar to the one that had been described by the C.I., the police had reasonable suspicion that criminal activity was afoot. The officers acted properly by approaching the car to investigate. Under these facts, they were permitted to stop Defendant for a brief period of detention.

¶ 6 This is not made improper because the officers drew their guns. They

did not point their guns at Defendant. It is noted that as typically is the case, a firearm was recovered. Our law enforcement officers are not required to take any more risks than those already inherent in stopping a drug suspect, particularly one in an automobile. An officer approaching a car cannot see if there is a weapon being held below the level of the car window. While we ask our police officers to take risks, we do not ask them to be suicidal. It is both prudent and safe for an officer to draw his firearm when approaching a vehicle in a criminal investigation (as opposed to a routine traffic stop).

¶ 7 We agree with the conclusion in the Commonwealth's brief at page 11:

In the case at bar, the crime suspected was the Possession of Marijuana With the Intent to Deliver it based upon information received from a reliable confidential informant; the detention lasted a matter of seconds; the location of the detention was a public street in front of a business that was closed for the night; the suspect was not transported at all until after he was placed under arrest; the method of detention was a mere approach by the police officers in order to investigate the possession of the contraband; the show, threat or use of force was minimal. In fact, the suppression court's findings are in accord with the testimony of the police officer that his weapon was pointed down to the ground and obscured from the defendant's view. The record supports this finding and under the test for the review of the denial of a suppression motion should not be disturbed on appeal.

¶ 8 Judge Koudelis' opinion also accurately and appropriately discusses the law relevant to this issue, as follows:

There are three levels of interaction between the police and citizens: mere encounter, investigative detention and custodial detention. *Commonwealth v.*

*Phinn,* 761 A.2d 176 (Pa.Super.2000). An investigative detention is more than a mere encounter with the police. The *Phinn* Court determined that an investigative detention occurs when a person is subject to a stop followed by some period of detention; however, during the detention there exist no coercive conditions that would constitute the functional equivalent of an arrest. *Id.* at 181. During an investigative detention the suspect is not free to leave but is not under arrest or its functional equivalent. To support the detention, the officer must establish that he or she had reasonable suspicion that the suspect has engaged in criminal activity to validly detain the suspect.

Trial Ct. Op. P. 7.

\* \* \* \* \* \*

¶ 9 Once the officers saw and smelled the marijuana, they were justified in making an arrest. The marijuana was in plain view, the other drug-related items were found in a search incident to the arrest, and the gun was found during a proper inventory search.

¶ 10 Judgment of sentence affirmed.