J-S96001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHUA BAVIN, | |
| Appellant | No. 1416 WDA 2014 |

Appeal from the Judgment of Sentence Entered February 7, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001914-2013

BEFORE:  BENDER, P.J.E., BOWES, J., and SOLANO, J.

MEMORANDUM BY BENDER, P.J.E.:                   **FILED JANUARY 19, 2017**

Appellant, Joshua Bavin, appeals from the judgment of sentence of an aggregate term of 5 to 15 years' incarceration, followed by 4 years' probation, imposed after he was convicted of multiple counts of drug-related offenses.  Appellant challenges the trial court's denial of his pretrial motion to suppress, as well as the legality of a mandatory-minimum sentence imposed in his case.  After careful review, we affirm Appellant's convictions, but vacate his judgment of sentence and remand for resentencing.

In January of 2013, Appellant was arrested and charged with two counts of possession with intent to deliver a controlled substance, 35 P.S. § 780-113(a)(30);  two counts of possession of a controlled substance, 35 P.S. § 780-113(a)(16); and one count of criminal conspiracy, 18 Pa.C.S. § 903. Prior to trial, Appellant filed a motion to suppress evidence, and a hearing

was conducted on November 13, 2013. At the close of that proceeding, the trial court denied Appellant's motion. His case proceeded to a jury trial, where Appellant was convicted of the above-stated offenses. He was sentenced to the aggregate term stated, *supra*, on February 7, 2014.

Appellant filed a timely post-sentence motion, which the court denied. He then filed a timely notice of appeal and, following a lengthy delay in obtaining transcripts, he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The court filed a responsive opinion in May of 2016. Herein, Appellant raises two issues for our review, which we have reordered for ease of disposition:

> 1. Whether the [t]rial [c]ourt erred when it denied [Appellant's] motion to suppress when [Appellant] was seized without sufficient reasonable suspicion or probable cause?
>
> 2. Whether the [t]rial [c]ourt erred in sentencing [Appellant] to a mandatory minimum sentence under 18 Pa.C.S.A. § 7508(a)(7)(iii) when such mandatory sentences are unconstitutional under ***Alleyne v. United States***, - U.S. -, 133 S.Ct. 151 (2013); ***Commonwealth v. Newman***, 99 A.3d 86 (Pa. Super. 2014) (*en banc*)[;] and ***Commonwealth v. Fennell***, 101 A.3d 13 (Pa. Super. 2014)?

Appellant's Brief at 4.

Our standard of reviewing the denial of a suppression motion is as follows:

> In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts.

*Commonwealth v. Hoopes*, 722 A.2d 172, 174-75 (Pa. Super. 1998).

Before delving into Appellant's specific suppression claims, we first summarize the pertinent evidence presented at the suppression hearing, and the legal conclusions reached by the trial court based on that evidence.

Detective Ryan Martin testified first for the Commonwealth. He stated that at approximately 9:40 p.m. on January 22, 2013, a known and reliable confidential informant (hereinafter, "CI") called him with information about "a short white male with short hair" who had been "traveling in the Northside area of the City of Pittsburgh distributing large amounts of heroin." N.T., 11/13/13, at 13.[1] Detective Martin testified that he had received other complaints about "large quantities of narcotics being distributed on the Northside area of the City of Pittsburgh" within the two weeks preceding the CI's call. *Id.* The CI told him that the short, white male with short hair was going to be traveling with a white female to the Giant Eagle on Rodi Road in Penn Hills, which is just outside the City of Pittsburgh, for the purpose of selling heroin to a white female. *Id.* at 14, 15. The CI explained that the white male would be driving a "light blue Chevy" and was going to meet the white, female buyer at the "front

---

[1] The reliability of the CI in this case is not in dispute. However, we note that Detective Martin testified that, within the two weeks prior to January 22, 2013, that same CI had provided Detective Martin with information that led to a seizure of nine bricks (or 450 stamped bags) of heroin and a felony arrest in an unrelated case. N.T. at 15.

- 3 -

entrance of the Giant Eagle parking lot." *Id.* at 15. That specific shopping plaza is a high crime area, with "[t]he sale and use of narcotics" being "the most prevalent type of crime in that area." *Id.* at 57.

Based on the CI's information, Detective Martin and another detective set up surveillance at the Giant Eagle parking lot. *Id.* at 16-17. Once there, the detective received another call from the CI, who stated that the white male in the light blue Chevrolet would be arriving at the Giant Eagle "[i]n approximately five minutes." *Id.* at 17. Approximately five minutes later, Detective Martin "observed a light blue Chevy Cobalt pull into the Giant Eagle parking lot and park in front of the front entrance of the Giant Eagle." *Id.* Inside the car, Detective Martin could see "a white male driver with short hair," and "a white female passenger." *Id.* At that point, Detective Martin "radioed the assisting detectives to approach the vehicle." *Id.* At the suppression hearing, Detective Martin identified Appellant as the driver of the Chevrolet vehicle. *Id.* at 18.

Detective Brian Burgunder testified that he was one of the officers who approached Appellant's vehicle.[2] He could not specifically recall if the

---

[2] Appellant contends that twelve officers approached his car, but the record does not support that claim. Instead, the evidence demonstrated that there were as many as twelve officers *present at the scene*, but only seven of those officers *actually approached* Appellant's vehicle. *See* N.T. at 36-37, 38-39. More specifically, three officers approached the passenger side window of the car, while four officers approached the driver's side window. *Id.* at 38-39.

officers advanced toward the vehicle with their guns drawn, but he testified that doing so would have been "protocol" in this type of situation. *Id.* at 46. Detective Burgunder stated that all the officers who approached the vehicle had police badges clearly displayed, and he "was verbally telling [Appellant they were] Pittsburgh Police…." *Id.* at 47.

Detective Burgunder was the officer who first spoke to Appellant. The detective testified that he had a "brief" conversation with Appellant "in normal voice levels" and his gun was not drawn at that point. *Id.* at 47, 48.[3] He testified that the conversation with Appellant went as follows:

> [Detective Burgunder]: I explained to [Appellant] that we believed he was in the area to conduct a narcotics transaction involving heroin and prescription narcotic pills. At that point[, Appellant] said that he didn't have anything on his person. I subsequently asked him if he would consent to a search of his person and the vehicle, and he immediately complied.

*Id.* at 47. The female passenger in Appellant's vehicle also consented to a search of her person. *Id.* at 53. Ultimately, the search revealed 100 Oxycodone pills in Appellant's pocket, as well as "eight bricks of heroin plus 48 bags, [a] spoon, and a rubber tourniquet" in the female passenger's pants. *Id.*

---

[3] Detective Burgunder initially claimed that his conversation with Appellant occurred while Appellant "was still seated in the vehicle." *Id.* at 47. However, on cross-examination, the detective effectively changed his testimony, acknowledging that he "ordered [Appellant] out of the vehicle, [Appellant] immediately complied, and then this conversation took place." *Id.* at 50-51. For purposes of our review, we will presume that Appellant was ordered out of the vehicle prior to his conversation with the detective.

Based on this evidence, trial court concluded that Appellant was subjected to an investigative detention that was supported by reasonable suspicion. *Id.* at 69. The court emphasized that there was "a known reliable informant" and "the information [was] corroborated by the observations of the officers…." *Id.* at 69. The court also noted that the location of the detention was known to be a "high drug trafficking area." *Id.* at 70. Therefore, the court concluded that the stop of Appellant was legal and, because he ultimately consented to the search of his person, that search was legal, as well. *See* Trial Court Opinion (TCO), 5/3/16, at 8.

On appeal, Appellant contends that his interaction with police constituted "a custodial detention for which law enforcement lacked sufficient probable cause to justify the seizure of his person." Appellant's Brief at 22 (emphasis omitted). Alternatively, Appellant claims that even if he was only detained for investigation, officers did not have reasonable suspicion to validate that detention. Finally, Appellant argues that his consent to search his person "was a product of the illegal detention and was not independently and voluntarily given." *Id.* at 25 (emphasis omitted).

In assessing Appellant's claims, we are mindful that,

Pennsylvania case law recognizes three categories of interaction between police officers and citizens. The first is a mere encounter, which need not be supported by any level of suspicion. The second is an investigative detention, which must be supported by reasonable suspicion. This interaction subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The third category, a custodial detention, must be supported by probable cause. The police have probable

cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed.

***Commonwealth v. Caban***, 60 A.3d 120, 127 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Here, we initially agree with the trial court that Appellant was subjected to an investigative detention, rather than an arrest. Our Supreme Court has declared that,

> [t]he factors typically considered in determining whether a detention is investigative or custodial are:
>
>> the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and, the investigative methods used to confirm or dispel suspicions.

***In Interest of S.J.***, 713 A.2d 45, 47 (Pa. 1998) (quoting ***Commonwealth v. Gommer***, 445 Pa.Super. 571, 581, 665 A.2d 1269, 1274 (1995) (citations omitted)).

Here, the basis for the detention was a tip from a reliable CI that a man matching Appellant's description was travelling to a specific location, with a white female passenger, in a specific color and make of vehicle, at a specific time, and for the purpose of selling heroin. Appellant was ultimately detained in a public parking lot of a grocery store. During that detention, he was not transported anywhere. Additionally, the evidence indicated that Appellant's detention was brief in duration. For instance, Detective

Burgunder testified that he approached Appellant's vehicle, immediately asked Appellant to exit the car, and informed Appellant that he was suspected of being in the area to sell heroin and prescription pills. Appellant then denied that he possessed any narcotics and consented to a search of his person. These facts support that the detective "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly…." **Commonwealth v. Douglass**, 539 A.2d 412, 421 (Pa. Super. 1988) (discussing the factors to consider in determining if a detention is "too long in duration to be justified as an investigative stop") (citations omitted).

In regard to the factor of whether the officers showed, threatened or used force, we recognize that seven officers approached Appellant, likely with their weapons drawn, and Detective Burgunder immediately ordered him to exit his vehicle. Certainly, these acts constitute a showing of force. However, this Court concluded in **Commonwealth v. Johnson**, 849 A.2d 1236 (Pa. Super. 2004), that five officers' approaching Johnson's vehicle with their guns at their sides still constituted an investigative detention, not an arrest. **Id.** at 1238. In reaching this decision, we stressed that the officers did not have their guns pointed at Johnson. **Id.** at 1239.[4] In this

_____

[4] The **Johnson** panel also noted that the officers' decision to ready their weapons when approaching Johnson's car for the purpose of a criminal investigation was "prudent and safe[,]" as "[a]n officer approaching a car cannot see if there is a weapon being held below the level of the car window." **Johnson**, 849 A.2d at 1239.

case, even if we presume that the seven officers who approached Appellant's vehicle had their weapons drawn as 'protocol,' there was no evidence suggesting that they had their weapons pointed at Appellant.

Additionally, both our Supreme Court and this Court have recognized that ordering a person out of his or her vehicle is indicative of a detention, but does not necessarily escalate the detention to an arrest. **See Commonwealth v. Reppert**, 814 A.2d 1196, 1202 (Pa. Super. 2002) (listing cases that "have applied [the 'investigative detention'] standard in the context of motor vehicle stops during which police have ordered a motorist or his passengers to disembark"). Here, Detective Burgunder testified that his weapon was not drawn when he directed Appellant to exit the vehicle, and he did not threaten Appellant in any manner in ordering him to do so. N.T. at 48. Moreover, there was no evidence that Appellant was forcibly removed from the car; rather, the detective testified that Appellant "immediately complied" with the order to get out. **Id.** at 51. There was also no evidence suggesting that Appellant was subjected to force after he stepped out of the car. For instance, Appellant was not placed in handcuffs, put into the back of a police car, ordered to lie on the ground, or directed to place his hands on his head or on the hood of the vehicle.

In sum, the factors outlined in **S.J.**, and this Court's decision in **Johnson**, support the trial court's decision that Appellant was subjected to an investigative detention, rather than to a custodial detention.

Consequently, we must next assess whether there was reasonable suspicion

to support that detention. *See Caban*, 60 A.3d at 127.

Again, *Johnson* is instructive, as the facts of that decision closely

mirror those of the present case. In *Johnson*,

> [o]n the date of the arrest, October 2, 2002, Officer DeFrancesco received information from a confidential informant (C.I.) that a young, stocky, African–American male would be delivering marijuana in a blue Oldsmobile on the 6700 block of Market Street in Upper Darby, PA. Later, Officer DeFrancesco received more information from the C.I. stating that the time of delivery would be between 6:00 and 10:00 p.m. The information was received shortly before 6:00 p.m., and five officers immediately set up a surveillance. A man fitting the description in a car fitting the description arrived in the location.
>
> The officers approached the car, with their guns drawn but at their sides.

*Johnson*, 849 A.2d at 1237. Ultimately, the *Johnson* panel held that,

> based on the information given by a C.I. who had proven to be reliable in the past, when a man fitting the description arrived at the appointed location in a car similar to the one that had been described by the C.I., the police had reasonable suspicion that criminal activity was afoot. The officers acted properly by approaching the car to investigate. Under these facts, they were permitted to stop [Johnson] for a brief period of detention.

*Id.*[5]

---

[5] We acknowledge that after officers approached Johnson's car, they observed a bag of marijuana in his back seat and smelled an odor of marijuana emanating from his vehicle. *See Johnson*, 849 A.2d at 1237. These facts led to Johnson's arrest, but they did not factor into our Court's assessment of the lawfulness of his detention.

As in ***Johnson***, here, Detective Martin received a tip from a reliable CI that had provided accurate information just two weeks prior to the information he supplied about Appellant. Also similar to ***Johnson***, the CI gave Detective Martin detailed information about the drug that was to be delivered (in this case, heroin), a physical description of Appellant, and a general description of his vehicle. Additionally, the CI in this case also stated that a white, female passenger would be in Appellant's car, and the CI gave a more definitive time-frame of Appellant's arrival than the four-hour window provided by the CI in ***Johnson***. Specifically, the CI notified Detective Martin that Appellant would be arriving at the Giant Eagle within five minutes. Five minutes later, Detective Martin observed a car matching the one described by the CI, and driven by Appellant, who fit the physical description provided by the CI. A white female was in the car with Appellant, which further aligned with the CI's information. Additionally, Appellant parked his car at the front entrance of the store, just as the CI said he would do. Finally, that specific Giant Eagle shopping plaza is a high-crime area known for narcotics transactions. Based on the totality of these facts, which mirror - if not exceed - those in ***Johnson***, we conclude that Detective Martin had reasonable suspicion to order the investigative detention of Appellant.

Finally, we reject Appellant's claim that his consent to the search was involuntary. Notably, Appellant's argument is grounded on his claim that his detention was illegal, which is meritless for the reasons stated *supra*.

- 11 -

Moreover, the evidence presented at the suppression hearing does not support a conclusion that Appellant's consent was coerced. Importantly, Detective Burgunder testified that after Appellant complied with the order to get out of the vehicle, the detective and Appellant had a "conversation … in normal voice levels[,]" during which Appellant was informed that he was suspected of being "in the area to conduct a narcotics transaction…." N.T. at 47, 48. When Appellant responded "that he didn't have anything on his person[,]" the detective "asked [Appellant] if he would consent to a search of his person and the vehicle, [and Appellant] immediately complied." *Id.* at 47. Detective Burgunder testified that there were "absolutely" no threats made to Appellant before Appellant consented to that search. *Id.* Thus, there is no basis on which to conclude that Appellant's consent, which followed his lawful detention, was involuntary.

For all of these reasons, we conclude that the trial court did not err in determining that Appellant was subjected to an investigative detention that was supported by reasonable suspicion, and that he voluntarily consented to the search of his person and the vehicle. Accordingly, Appellant's challenge to the court's denial of his motion to suppress is meritless.

Next, Appellant challenges the legality of a five-year mandatory minimum sentence, imposed pursuant to 18 Pa.C.S. § 7508(a)(7)(iii) (based on the aggregate weight of the drugs he possessed with intent to deliver). Appellant contends that this sentence is now illegal under the United Supreme Court's ruling in *Alleyne*, and this Court's decisions in *Newman*

and **Fennell**.[6]   The Commonwealth and the trial court both agree with Appellant, as do we.   **See** TCO at 5-6; Commonwealth's Brief at 6.   Because section 7508 has been invalidated in the wake of **Alleyne**, and Appellant is currently appealing from his judgment of sentence, we vacate the illegal, mandatory minimum term imposed under section 7508, and remand for resentencing for that offense.[7]

Judgment of sentence vacated.   Case remanded for resentencing. Jurisdiction relinquished.

_____

[6] **See Alleyne**, 133 S.Ct. at 2163 (holding that "facts that increase mandatory minimum sentences must be submitted to the jury" and found beyond a reasonable doubt); **Newman**, 99 A.3d at 97-98, 101-102 (holding that the 'proof at sentencing' provision contained in 42 Pa.C.S. § 9712.1, and many other mandatory minimum sentencing statutes in this Commonwealth, violates **Alleyne** and is not severable from the non-offending portions of the statute, thus rendering the statute unconstitutional in its entirety); **Fennell**, 105 A.3d at 20 (concluding that 18 Pa.C.S. § 7508 is unconstitutional in its entirety under **Alleyne** and **Newman**).

[7] We conclude that our disposition does not upset the court's overall sentencing scheme, so we need not vacate Appellant's other sentences. **See Commonwealth v. Thur**, 906 A.2d 552, 569-70 (Pa. Super. 2006) (stating that if our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/19/2017