2019 PA Super 102

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW DIX | : | |
| | : | |
| Appellant | : | No. 2157 EDA 2017 |

Appeal from the Judgment of Sentence January 30, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001841-2016

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.: **FILED APRIL 1, 2019**

Matthew Dix appeals from the judgment of sentence entered following his bench-trial convictions for possession of a controlled substance with intent to deliver ("PWID") and possessing instruments of crime ("PIC").[1] Dix challenges the denial of his suppression motion and the sufficiency of the evidence. We affirm.

Dix was arrested on February 2, 2016, following a police stop outside his vehicle, where the police recovered a hatchet from Dix's waistband and crack cocaine from the floor near the vehicle's driver seat. Dix filed a motion to suppress the hatchet and crack cocaine, arguing the police officers detained him without probable cause and lacked reasonable suspicion to stop him.

The trial court held a hearing on the motion to suppress. At the hearing, Police Officer Marvin Ruley and Sergeant Dennis Johnson testified as follows.

---

[1] 35 P.S. § 780-113(a)(3) and 18 Pa.C.S.A. § 907(a).

On February 2, 2016, Officer Ruley and Sergeant Johnson were on patrol in plain clothes and in an unmarked police car near the 5100 block of Westminster Avenue in Philadelphia, which is a high crime area. N.T., 10/28/16, at 7, 13-14, 23. While stopped at a red light, the police officers saw Dix park his truck, exit the truck, and reach toward the floor of the truck, under the driver's seat. *Id.* at 8, 23-24. Dix then lifted his shirt and placed a large object into the front part of his waistband. *Id.* at 8, 24. He closed the car door and proceeded toward a corner store. *Id.* at 8, 24.

The police officers believed that Dix had just placed a firearm in his waistband and therefore parked their car and walked toward Dix. *Id.* at 8, 24. Dix saw the officers, turned, walked back to his truck, and opened the door. *Id.* at 8, 24. Sergeant Johnson approached the driver's side of the truck and Officer Ruley approached the passenger side, where a second man was sitting. *Id.* at 8, 24. The officers observed Dix reach down toward the floor of the truck, as though placing items underneath the driver's seat. *Id.* at 8, 17, 26. Sergeant Johnson drew his gun, told Dix to place his hands on the truck, and frisked Dix's waistband area, where he discovered a hatchet. *Id.* at 9, 25.

Officer Ruley walked to the passenger side of the truck and "probably" had his gun drawn. *Id.* at 9, 17. From his position on the sidewalk, Officer Ruley was able to see a clear plastic bag filled with what he recognized as narcotics. *Id.* at 9; N.T., 12/5/16, at 7, 11. The bag was on the floor of the truck in front of the driver's seat. *Id.* It was later determined that the bag contained 55 packets of crack cocaine. N.T., 10/28/16, at 9.

The trial court denied the motion,[2] stating:

> It's a unique move when an officer sees someone on the street side from behind. And they were quite clear about that. You know, what they saw was that they saw this defendant pulling up his shirt and looked like he was secreting something in his waistband. And observing that, they had an obligation as officers to stop and investigate because of the area, as a high-crime, high-drug area. We all know it goes hand and hand with drugs and weapons.
>
> So they approached the vehicle, albeit with their weapons out because they think he's – giving the motion toward the store and his observation. One of the officers testified he saw him in back; the other did not. And he goes back and he starts in for the truck.
>
> Looking at this picture, you may think it's hard, as a lay person to look at that packet and to recognize what it is, but an officer with 20 years['] experience and all these years of narcotics, clearly, can identify what and how drugs are packaged, more readily to their knowledge than to you or I.
>
> So given the fact that they see this movement, which gives them legitimate belief that this defendant is armed and dangerous and approach the vehicle, the one officer is handling the defendant with the frisk for a weapon as the other approached him on an angle. As he said, on an angle, where he's standing above the vehicle, now looking in, his recognition of the packaged narcotics seem to be reasonable.
>
> For all those reasons, I think the officers followed the law. The motion to suppress is denied.

N.T., 12/5/16, at 25-26.

---

[2] The trial court described the interaction as a car stop. We conclude, however, that this was not a car stop, as the police officers stopped Dix due to his actions while outside of his vehicle.

Dix proceeded to a bench trial. The Commonwealth admitted all non-hearsay testimony from the motion to suppress. In addition, Officer Ruley testified that the vehicle's passenger was using his telephone, and did not look in the officer's direction "until [the officer] got to the door." *Id.* at 35. Prior to observing the drugs on the floor, Officer Ruley did not see the passenger make any movements. *Id.* at 37, 40.

Dix and the Commonwealth entered the following stipulations: (1) whoever possessed the narcotics did so with the intent to deliver the narcotics, *id.* at 41; and (2) the passenger has two convictions for PWID, one from 2009 and one from 2015, and that he had been sentenced on the 2015 PWID conviction on December 29, 2015. *id*. at 43.

The trial court found Dix guilty of PWID and PIC. The trial court sentenced Dix to two to four years' incarceration and two years' probation for the PWID conviction, and imposed no further penalty for the PIC conviction. Dix filed post-sentence motions, which the trial court denied. Dix then filed a timely notice of appeal.

Dix raises the following issues on appeal:

> (1) Did the trial court err in denying the suppression motion where the officers had neither probable cause nor reasonable suspicion when they drew their weapons on [] Dix?
>
> (2) Did the trial court err in finding the evidence sufficient to convict [] Dix of the possession charges where there was reasonable doubt as to his constructive possession of a bag found in a truck next to another person who had recently been convicted of [PWID]?

(3) Did the court err in finding the evidence sufficient to convict [] Dix of [PIC] where the Commonwealth did not present a case at trial for that charge?

Dix's Br. at 3.

Dix first argues the trial court erred in denying his motion to suppress. He argues that a full custodial detention occurred when the police officers approached Dix with their guns drawn and forced him to place his hands on the roof of his truck. He argues the custodial detention was illegal because the police officers lacked probable cause. He further argues that even if the stop was an investigative detention, the police officers lacked reasonable suspicion to conduct the stop, claiming that they did not have specific and articulable facts that Dix was engaged in criminal activity or that he was armed and dangerous. He maintains that his presence in a high crime area and retreat from officers, and that the officers observed Dix put an unidentified object in his waistband, did not provide reasonable suspicion of ongoing criminal activity.

Our standard of review on appeal of the denial of a motion to suppress is limited to determining "whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa.Super. 2011) (quoting *Commonwealth v. Lohr*, 715 A.2d 459, 461 (Pa.Super. 1998)). If the record supports the factual findings of the trial court, we reverse "only if there is an error in the legal conclusions drawn from those factual findings." *Id.* (citation omitted).

"The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a **Terry**[3] stop . . . ; and (3) a custodial detention." **Commonwealth v. Mackey**, 177 A.3d 221, 227 (Pa.Super. 2017).

"A mere encounter can be any formal or informal interaction between an officer and a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond." **Id.** (quoting **Commonwealth v. DeHart**, 745 A.2d 633, 636 (Pa.Super. 2000). A mere encounter does not need to be justified by any level of police suspicion. **Id.**

"[A]n 'investigative detention' . . . carries an official compulsion to stop and respond." **Id.** (quoting **DeHart**, 745 A.2d at 636). Because an investigative detention "has elements of official compulsion it requires reasonable suspicion of unlawful activity." **Id.** (quoting **DeHart**, 745 A.2d at 636). In addition, although "reasonable suspicion of unlawful activity is sufficient to justify a forcible stop, it does not necessarily justify a frisk for weapons." **Id.** Rather, a weapons frisk is appropriate, "[o]nly when the officer reasonably believes the suspect may be armed and dangerous." **Id.**

"[A] custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." **Id.** (quoting **DeHart**, 745 A.2d at 636). A custodial detention "requires that the police have probable

---

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

cause to believe that the person so detained has committed or is committing a crime." ***Id.***

The officers' drawing their guns when they stopped Dix did not render the stop a custodial detention. In ***Commonwealth v. Johnson***, 849 A.2d 1236, 1237 (Pa.Super. 2004), the police received a tip from a confidential informant that a "young, stocky, African-American male would be delivering marijuana" to a specific car at a specific location and that the delivery would occur between 6:00 p.m. and 10:00 p.m. When the officers observed a man fitting the description arrive at the location, they approached the car with their "guns drawn but at their sides." ***Id.*** We concluded that this was an investigative detention, not a custodial detention. ***Id.*** at 1238. We also found that the police had reasonable suspicion that criminal activity was afoot, as a man fitting the confidential informant's description arrived at the described location in a car similar to that described by the confidential informant. ***Id.*** We further concluded the investigative detention "was not made improper because the officers drew their guns." ***Id.*** We noted the officers did not point the guns at the defendant, and noted that "[o]ur law enforcement officers are not required to take any more risks than those already inherent in stopping a drug suspect, particularly one in an automobile." ***Id.*** at 1239.

The cases cited by Dix to support his claim that the stop was a custodial detention because the officers drew their guns are distinguishable. For example, in ***Commonwealth v. White***, 669 A.2d 896, 897, 901 (Pa. 1995), the Pennsylvania Supreme Court concluded that the defendant was under

arrest before the police officers searched his car, where the police officers had search warrants for defendant's person and residence, but not his vehicle, and where six to eight officers converged on the defendant's car and took him into custody. The Court noted that "[h]ad he attempted to leave, it seems likely that he would have been looking down the barrel of several guns." *Id.* at 901. Unlike in **White**, only two officers approached Dix with their guns drawn. It cannot be said that the officers "converged" on him, or that he was "looking down the barrel of several guns."

Further, in **Commonwealth v. Albert**, we observed that the "display of a weapon by an officer is an example of coercive police conduct." 767 A.2d 549, 552 (Pa.Super. 2001). However, we held that when the officer in that case approached the defendant, with his gun drawn, and yelled for the defendant to stop, an investigatory detention, not a custodial detention, occurred. *Id.*

Here, the officers approached Dix with their guns drawn. Nonetheless, the totality of the circumstances do not render the detention the functional equivalent of an arrest. The officers stopped the defendant and conducted a very brief pat-down search. The stop constituted an investigative detention. **Johnson**, 849 A.2d at 1237-39; **Albert**, 767 A.2d at 552.

Because we conclude that this was an investigative detention, we must next determine whether the trial court erred in concluding the police officers had reasonable suspicion that Dix was engaging in criminal activity to support

the stop, and reasonable suspicion that Dix was armed to support the frisk. **See Mackey**, 177 A.3d at 227.

The trial court concluded the officers had an obligation to investigate when they observed Dix, in a high-crime and high-drug area, secreting a large item in his waistband. We agree.

Based on the facts of this encounter, the police officers had reasonable suspicion for both the stop and the weapon search. First, the stop was supported by reasonable suspicion. The police officers observed Dix exit a car in a high crime area, reach toward the floor of the car, place a large item in his waistband, and proceed toward a corner store. When Dix observed the officers, rather than continuing to the corner store, Dix immediately retreated to the car and again made motions as though placing an item on the floor of the truck. Such observations provided reasonable suspicion that Dix was in possession of contraband and supported an investigatory detention. **See Commonwealth v. Davis**, 102 A.3d 996, 1000 (Pa.Super. 2014) (finding reasonable suspicion of criminal activity and that defendant was armed and potentially dangerous where, at 2:00 a.m. in a high crime area, police officers found defendant and another person standing over an unconscious man and officer noticed an object weighing down defendant's jacket pocket).

Further, the police officers reasonably believed that the large item placed in Dix's waistband was a weapon, which provided reasonable suspicion to support a frisk of Dix's person. **Commonwealth v. Foglia**, 979 A.2d 357, 361 (Pa.Super. 2009) (*en banc*) (protective search supported by reasonable

suspicion where police received anonymous tip that a man dressed in black had weapon, police observed a man dressed in black engage in evasive behavior by looking back at police and walking away and touch his waist area, where the officers knew people often conceal weapons).[4] We therefore conclude the trial court did not err in denying Dix's motion to suppress.

Dix next challenges the sufficiency of the evidence supporting his PWID and PIC convictions.

When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in the light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt. *See Commonwealth v. Brown*, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (quoting *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-06 (Pa.Super. 2008)).

Dix maintains the Commonwealth failed to establish constructive possession, arguing his passenger possessed the narcotics. He claims there

---

[4] On appeal, Dix challenges the legality of the stop and the search of his person. As to the discovery of the narcotics, he argues that the drugs are inadmissible because the seizure was not proper. Dix's Br. at 7. He does not challenge the finding that the drugs were found in plain view and, therefore, does not argue the drugs were inadmissible even if the stop was improper. Dix's Br. at 7.

was no evidence Dix had control over the area in which the drugs were found and his passenger had recently been convicted of PWID.

To sustain a conviction for possession of a controlled substance with intent to deliver, the Commonwealth must establish the defendant knowingly or intentionally possessed a controlled substance without being properly registered to do so, with the intent to manufacture, distribute, or deliver it. *See* 35 P.S. § 780–113(a)(30); *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super. 2012).

Because Dix was not in physical possession of the narcotics, the Commonwealth was required to establish Dix had constructive possession. *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013). To establish constructive possession of contraband, the Commonwealth must show that the defendant has "conscious dominion" over the contraband, that is, "the power to control the contraband and the intent to exercise that control." *Brown*, 48 A.3d at 430 (quoting *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa.Super. 2004)). The "intent to maintain a conscious dominion may be inferred from the totality of the circumstances," and "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (citations and brackets omitted).

Here, Dix drove the vehicle in which the narcotics were recovered. Further, the police officers observed Dix retrieve something from under the driver's seat before exiting the vehicle and again saw him attempt to hide

something under the driver's seat when he returned to the vehicle. The police officer recovered the narcotics from the floor in front of the driver's seat. This evidence is sufficient to support a finding Dix constructively possessed, that is, had conscious dominion over, the narcotics. **See Hopkins**, 67 A.3d at 821 (finding sufficient evidence that defendant constructively possessed drugs, even though co-defendant claimed possession, where defendant drove his car toward a known drug user and, when police approached, police officer observed defendant attempt to hide drugs in the space between driver's seat and center console, and found defendant with two cell phones and $361 in cash on his person); **Commonwealth v. Thompson**, 779 A.2d 1195, 1199-1200 (Pa.Super. 2001) (finding sufficient evidence of constructive possession where drugs found in crack of back seat of car and another passenger testified she observed defendant moving his hands from his pockets toward crack in back seat during traffic stop).

Dix next maintains the Commonwealth failed to establish the conviction for PIC because it did not prove that Dix intended to employ the hatchet for criminal purposes.

To establish a conviction for PIC, the Commonwealth must establish the defendant possessed "any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). "[I]ntent can generally be inferred from the surrounding circumstances." **In re A.C.**, 763 A.2d 889, 891 (Pa.Super. 2000). Intent to employ a weapon criminally "cannot be inferred from mere possession of the weapon." **Id.**

Here, Dix was found with a hatchet in his waistband and was found to possess narcotics that he intended to illegally deliver to others. Further, when he first exited the vehicle, the police observed him take a large item from the same spot in which they later discovered the narcotics, and place it in his waistband. This evidence supports a finding that Dix possessed the hatchet with the intent to employ it criminally. ***Commonwealth v. Weston***, 749 A.2d 458, 462 (Pa. 2000) (finding sufficient evidence of intent to employ firearm illegally where defendant armed himself with gun before confronting victim).

Judgment of sentence affirmed.

Judge Stabile joins the opinion.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/19

- 13 -