J-S34025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SOLOMON MICHAEL STEVENS | : | |
| | : | |
| Appellant | : | No. 130 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 18, 2022
In the Court of Common Pleas of Fayette County
Criminal Division at CP-26-CR-0000396-2021

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED:  November 4, 2022**

Solomon Michael Stevens (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of possession of a firearm prohibited, firearms not to be carried without a license, possession of a controlled substance, possession of a controlled substance with intent to deliver, and possession of drug paraphernalia.[1]  We affirm.

The trial court summarized the underlying facts as follows:

On September 5th, 2020, at approximately 9:52 a.m., Pennsylvania State Police received a report that a male individual was asleep in a running vehicle located in the vicinity of 17 Tuskeegee Terrace in Uniontown and that the vehicle had been in that location and running, with the male individual asleep inside it, since at least 7:00 a.m.   Trooper [Cristen] Cindric was

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 35 P.S. §§ 780-113(a)(16), (30), and (32).

dispatched to the scene to perform a welfare check. Trooper Cindric arrived on the scene and located the vehicle. Trooper Cindric testified that Tuskegee Terrace is a high-crime area. Trooper Cindric performed a National Crime Information Center (NCIC) query on the vehicle and found that the vehicle was registered to a female with a listed address on West Main Street. Trooper Cindric approached the vehicle on foot and observed [Appellant] asleep in the driver's seat with the seat reclined significantly and the vehicle's engine running. Trooper Cindric knocked on the front window on the driver's side, but [Appellant] continued to sleep. Trooper Cindric knocked on the front window on the driver's side again, more forcefully, and [Appellant] woke up and rolled down the back window on the driver's side, at which time Trooper Cindric, "smelled the odor of marijuana emanating from inside the vehicle." Trooper Cindric identified herself and asked [Appellant] to roll down the front window on the driver's side, but [Appellant] did not comply. Trooper Cindric then asked [Appellant] what he was doing and [Appellant] did not answer her. Trooper Cindric [] asked [Appellant] if he knew where he was and [Appellant] answered that he was in Pershing Court. ([Appellant] was not in Pershing Court; Pershing Court is another housing project located on the opposite side of Route 40). Trooper Cindric then asked [Appellant] if he was visiting anyone in Tuskegee Terrace and he said that he was not. Trooper Cindric [] asked [Appellant] for his identification. Trooper Cindric testified that at this point [Appellant] became "upset" and "combative." Trooper Cindric called for backup. Trooper Cindric continued asking [Appellant] for his identification and [Appellant's] attitude continued to escalate until [Appellant] sat up in the seat and reached for the glove box, at which point Trooper Cindric asked him to step out of the vehicle. [Appellant] [] stepped out of the vehicle and gave her his ID, which had not been in the glove box but had, instead, been in his left front pocket. At this point, Trooper [Aaron] Hancheck arrived on the scene. Trooper Hancheck performed a **Terry**[2] pat down on [Appellant][3] and,

---

[2] **See Terry v. Ohio**, 392 U.S. 1 (1968).

[3] Trooper Cindric performed a "quick pat down search of [Appellant's] waistband pocket area of his pants" when Appellant exited the vehicle. N.T., 5/18/21 at 18. Trooper Hancheck testified that Appellant was not restrained. **Id.** at 7. Trooper Cindric asked Trooper Hancheck to "watch" Appellant;
*(Footnote Continued Next Page)*

simultaneously, Trooper Cindric performed a wingspan search of the immediate area of the vehicle which [Appellant] had occupied in order to determine if weapons were present. Trooper Hancheck located a loaded hand gun in [Appellant's] left front pocket. Trooper Cindric located two smoking devices [during the wingspan search], [and a later search of the car uncovered] two mason jars containing drugs, a digital scale, and rolling paper. Trooper Cindric determined that [Appellant] was prohibited from possessing a firearm.

Trial Court Opinion, 5/28/21, at 1-3 (footnotes added).

The Commonwealth charged Appellant with the above crimes, and Appellant filed omnibus pre-trial motions to suppress and for writ of *habeas corpus*. *Id.* at 7. After conducting a hearing, the trial court denied the motions. Trial commenced and the jury rendered its guilty verdicts on January 6, 2022. On January 18, 2022, the trial court sentenced Appellant to 7 - 14 years in prison, followed by 1 year of probation. This timely appeal followed.[4]

Appellant raises two issues for our review:

A. Did the court commit an error of law and/or abuse of discretion by denying Appellant's Omnibus Pre-Trial Motion to Suppress Evidence?

B. Did the court commit and error of law and/or abused [*sic*] its discretion by denying [Appellant's] Omnibus Pre-Trial Motion for a Writ of *Habeas Corpus*?

Appellant's Brief at 11.

---

Trooper Hancheck patted down Appellant and located a pistol in his left pocket. *Id.*

[4] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

In his first issue, Appellant contends the trial court erred by denying his suppression motion. Appellant's Brief at 22-49. Appellant challenges both the pat down of his person and the wingspan search of his vehicle.[5] *See id.* Appellant relies on this Court's decision in *Commonwealth v. Arrington*, 233 A.3d 910 (Pa. Super. 2020), to support his claim that the troopers lacked the requisite reasonable suspicion to justify the searches. *Id.* at 40-49. Appellant argues this case is "substantially similar, both factually and legally to *Arrington* [and the cases it relied upon.]" *Id.* at 45. We disagree.

In reviewing a denial of a motion to suppress, this Court's role is to decide:

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are

---

[5] Appellant discusses at length the development of Pennsylvania search and seizure law, including our Supreme Court's decision in *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020). However, Appellant did not below, and does not on appeal, challenge the complete search of his car, except to say that because the wingspan search was illegal, the evidence seized during the later search was fruit of the poisonous tree. *See* Omnibus Pre-Trial Motion to Suppress, 4/5/21, 1-5; Appellant's Brief at 22-37, 49-67.

subject to our plenary review. ... Our scope of review is limited to the evidence presented at the suppression hearing.

***Commonwealth v. Thran***, 185 A.3d 1041, 1043 (Pa. Super. 2018) (citations omitted).

We begin by recognizing the three categories of interaction between police and citizens:

> [T]he first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Way***, 238 A.3d 515, 518 (Pa. Super. 2020) (citation omitted).

The encounter in this case was an investigative detention. When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of ***Terry***, where the United States Supreme Court held that police may conduct an investigative detention if they have reasonable suspicion that criminal activity is afoot. ***In re: D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). These encounters are commonly known as ***Terry*** stops.

To prove reasonable suspicion, "the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience." ***Commonwealth v. Cook***, 735 A.2d 673, 677 (Pa. 1999). "The determination of whether an officer had reasonable

suspicion that criminality was afoot so as to justify an investigative detention is an objective one, which must be considered in light of the totality of the circumstances." ***Commonwealth v. Walls***, 53 A.3d 889, 893 (Pa. Super. 2012).

This Court has explained:

> It is well settled that an officer may pat-down an individual whose suspicious behavior he is investigating on the basis of a reasonable belief that the individual is presently armed and dangerous to the officer or others. To validate a ***Terry*** frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous. In determining whether a ***Terry*** frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances.

***Commonwealth v. Gray***, 896 A.2d 601, 605-06 (Pa. Super. 2006). Under this standard, police may conduct a limited pat-down of a person's outer clothing and/or a wingspan search of the passenger compartment of a vehicle "in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others." ***Commonwealth v. Wilson***, 927 A.2d 279, 285 (Pa. Super. 2007) (citation and internal quotation marks omitted); ***see also Commonwealth v. Morris***, 644 A.2d 721, 723 (Pa. 1994) ("[A] reasonable belief based on specific articulable actions taken by appellant (*i.e.,* specific articulable facts) entitles an officer to conduct a search of those portions of the passenger compartment of a suspect's vehicle in which a weapon could be placed.") (citation omitted).

Here, the trial court found the following circumstances justified the troopers' pat down of Appellant and the wingspan search of his car:

1)  That [Appellant] had been asleep in a running vehicle since at least 7:00 am,

2)  That the vehicle was located in a high crime area,

3)  That the vehicle was not registered to [Appellant],

4)  That, upon waking up, [Appellant] had not complied with Trooper Cindric's request to roll down the front window,

5)  That the smell of marijuana was emanating from the vehicle,

6)  That [Appellant] did not know where he was,

7)  That [Appellant] was not visiting anyone in the area,

8)  That [Appellant] had become belligerent when Trooper Cindric asked him for his identification,

8)  And that [Appellant] had reached for the glove box, despite the fact that his identification had been in his pocket.

The [trial c]ourt finds that Troopers Cindric and Hancheck were therefore able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led them reasonably to conclude, in light of their experience, that criminal activity was afoot and that [Appellant] was involved in that activity. The [trial c]ourt therefore finds that Troopers Cindric and Hancheck possessed the requisite reasonable suspicion to perform a *Terry* pat down on [Appellant,] and a simultaneous wingspan search of the immediate area of the vehicle which [Appellant] had occupied[,] in order to determine if weapons were present and that their actions were consistent with the Pennsylvania Superior Court's recent ruling in *Com. v. Burch* [2021 WL 1828488 (Pa. Super. May 7, 2021) (unpublished memorandum)].

Trial Court Opinion, 5/28/21, at 5.

Our review of the record confirms the trial court neither abused its discretion nor committed an error of law in denying Appellant's motion to suppress. Appellant's argument to the contrary disregards our standard of review by viewing the evidence in the light most favorable to himself. *See* Appellant's Brief at 18-23. Moreover, his reliance on *Arrington* is misplaced.

In *Arrington*, police stopped Arrington's vehicle for suspected driving under the influence of alcohol (DUI). *Arrington*, 233 A.3d at 913. The police asked Arrington, who exhibited signs of intoxication, to step out of the vehicle, after which they patted him down and handcuffed him. *Id.* A check revealed Arrington had a revoked permit to carry a handgun. *Id.* After Arrington denied he possessed a weapon, police searched the passenger area of the vehicle and found a stolen gun. *Id.* On appeal, Arrington challenged the initial search of his vehicle, but not the pat-down of his person, maintaining the police lacked reasonable suspicion to suspect he was dangerous and was in a position to gain control of a weapon. *Id.* at 915. We agreed, stating "the sole factors in support of reasonable suspicion were that the stop occurred at night and in a high-crime neighborhood." *Id.* at 917. We also emphasized that many of Arrington's actions, cited by the trial court in denying Arrington's motion to suppress, were "consistent with a DUI," and the police testimony that the first thing that occurred to them was "DUI." *Id.* Lastly, we pointed out that Arrington was handcuffed during the wingspan search. *Id.* at 917-18.

Here, as delineated by the trial court, the troopers articulated multiple factors supporting their reasonable suspicion, including the smell of marijuana emanating from the vehicle, Appellant's lack of cooperation, and his sudden movement toward the glove compartment. In addition, unlike in *Arrington*, there was no indication that Appellant's belligerent, combative behavior and refusal to obey commands or answer questions was caused by intoxication. Lastly, unlike in *Arrington*, Appellant was not handcuffed. Appellant's reliance on *Arrington* is misplaced.

This Court has explained that we will not require police officers "to take any more risks than those already inherent in stopping" a criminal suspect. *See Commonwealth v. Johnson*, 849 A.2d 1236, 1239 (Pa. Super. 2004). Moreover,

> [a]n overt threat by the suspect or clear showing of a weapon is not required for a frisk. It is well-established that [t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Commonwealth v. Mack*, 953 A.2d 587, 591 (Pa. Super. 2008) (citations and quotation marks omitted).

The record supports the trial court's finding that the combination of the above factors, in particular Appellant's combativeness, lack of explanation for his presence in a high-crime area, and his abrupt movement towards the glove compartment, constituted reasonable suspicion to justify the troopers' pat-down of Appellant's person and the wingspan search of his car. *See Morris*,

- 9 -

644 A.2d at 723; *see also Commonwealth v. Buchert*, 68 A.3d 911, 915 (Pa. Super. 2013) (finding reasonable suspicion where police conducted traffic stop at night and defendant reached under seat before exhibiting extreme nervousness); *Commonwealth v. Simmons*, 17 A.3d 399, 404 (Pa. Super. 2011) (finding reasonable suspicion where police conducted traffic stop at night in high drug crime area, and defendant made movements police believed were consistent with concealing a gun); and *Commonwealth v. Murray*, 936 A.2d 76, 80 (Pa. Super. 2007) (finding reasonable suspicion where traffic stop occurred at night and in high-narcotics area, defendant's vehicle had tinted windows, and defendant made "a lot of movement in the vehicle" as officer was approaching). Appellant's first issue does not merit relief.[6]

Judgment of sentence affirmed.

---

[6] We need not address Appellant's second issue challenging the denial of his motion for writ of *habeas corpus*, as his argument is dependent upon a determination that the trial court erred in denying Appellant's suppression motion. *See* Appellant's Brief at 49-67.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/4/2022