J-S33043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KASIIM BROOKS | : | |
| | : | |
| Appellant | : | No. 333 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 28, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002553-2019

BEFORE: KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MARCH 23, 2023**

Kasiim Brooks ("Brooks") appeals from the judgment of sentence imposed after a jury found him guilty of two counts possession of a controlled substance with intent to deliver ("PWID").[1]  We affirm the convictions but vacate the judgment of sentence and remand for resentencing.

The trial court summarized the factual history as follows:

> On February 8, 2019[,] at approximately 3:05 a.m., Officer Kevin Gamber (Officer Gamber) was issuing parking tickets in the area of the 7200 block of Lamport Road in Upper Darby[2] when he noticed [Brooks] unconscious in a car parked in a marked fire zone.  The license plate came back as an Enterprise rental car. . . .  Officer Gamber attempted to wake [up Brooks].
>
> Upon [Brooks] waking, he rolled the window down and Officer Gamber requested [Brooks] exit the vehicle to ensure that

---

[1] **See** 35 P.S. § 780-113(a)(30).

[2] Officer Gamber testified, and the trial court found, that the area is known as a high crime area.  **See** N.T. Suppression, 8/15/19, at 12-13; Trial Court Opinion, 4/5/22, at 5.

he was okay and to determine if he was intoxicated. During a pat down search, Officer Gamber felt [two] cell phones in [Brooks's] pocket [and noticed that Brooks was wearing an expensive watch]. . . .

\* \* \* \*

When Officer Gamber questioned [Brooks] on why he was in the area so late at night[, Brooks] responded that he was on his way to visit his grandmother and then fell asleep in his car, but could not give his grandmother's home address. Officer Gamber questioned [Brooks] in order to determine his level of intoxication, if any. Officer Gamber determined that [Brooks] was not intoxicated. [Brooks] fully cooperated with Officer Gamber during their interaction.

After backup officers arrived on the scene and [Brooks] was identified, Officer Gamber asked for permission to search the vehicle, which was granted. The three other officers who arrived on the scene did not interact with [Brooks] at this time and none of their vehicles had flashing lights. Officer Gamber [searched the car] and located 98 baggies of controlled substances[, later identified as fentanyl and cocaine,] in the inner compartment area of the driver['s] side door[, and the officer arrested Brooks.[3]] The time between stop and arrest lasted about 10 to 15 minutes.

Trial Court Opinion, 4/5/22, at 2, 4 (citations to the record omitted).

Brooks filed a motion to suppress the evidence recovered from the car asserting that he did not voluntarily consent to the search. The trial court denied the suppression motion following a hearing, and Brooks proceeded to

_____

[3] At trial, Officer Gamber testified that during his search he saw portions of a plastic bag protruding from a gap in the "master switch assembly," the panel on the driver's side door with controls for the power windows and locks. **See** N.T., 7/23/21, at 35. When the officer lifted the master switch assembly panel, he discovered the bag containing smaller bags of narcotics. **See id**. From the car's center console, the officer recovered baggies and rubber bands, along with two bundles of cash totaling $1,080; and from the trunk, the officer recovered a black duffle bag containing Brooks's identification, clothes, a list of phone numbers, and another bundle of cash totaling $1,027. **See** Trial Court Opinion, 4/5/22, at 2.

a jury trial. The jury found Brooks guilty of PWID (fentanyl) and PWID (cocaine). On September 28, 2021, the trial court sentenced Brooks to consecutive sentences of imprisonment of seventy-two to 114 months[4] for PWID (fentanyl) and thirty to sixty months for PWID (cocaine). Brooks filed a timely post-sentence motion, which the trial court denied. Brooks timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Brooks raises the following issues, which we have reordered for our review:

1. Whether the trial court erred in denying the pretrial motion to suppress physical evidence?

2. Whether the evidence was insufficient to sustain the verdict because the evidence failed to establish con[s]tructive possession of the unlawful narcotics secreted in the rental vehicle?

3. Whether the court abused its discretion in sentencing [Brooks] to an unduly harsh and excessive sentence?

Brooks's Brief at 10 (reordered).

In his first issue, Brooks challenges the validity of his consent to the search of the vehicle and claims that the trial court erred in denying his suppression motion. On appeal from the denial of a suppression motion:

Our standard of review . . . is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and

---

[4] As discussed further herein, the Commonwealth concedes that the trial court imposed an illegal sentence for PWID (fentanyl) because the minimum exceeded one-half of the maximum term of imprisonment. **See** Commonwealth's Brief at 16-17 (discussing 42 Pa.C.S.A. § 9756(b)(1)).

so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Galendez***, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (internal citation omitted). When examining a ruling on a pretrial motion to suppress, appellate courts are limited to reviewing only the evidence presented at the suppression hearing. ***See Commonwealth v. Bush***, 166 A.3d 1278, 1281-82 (Pa. Super. 2017).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect private citizens from unreasonable searches and seizures by government officials. ***See Commonwealth v. Strickler***, 757 A.2d 884, 888 (Pa. 2000). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies. One such exception is consent, voluntarily given." ***See id***. (internal citations omitted). The Commonwealth bears the burden of proving, by a preponderance of the evidence, that a challenged search was constitutional. ***See Commonwealth v. McCleary***, 193 A.3d 387, 390 (Pa. Super. 2018); ***see also*** Pa.R.Crim.P. 581(H).

In consent cases, a court's analysis begins with an examination of the interaction between the defendant and the police. ***See Commonwealth v. Mattis***, 252 A.3d 650, 654 (Pa. Super. 2021). If the underlying interaction between a defendant and a police officer is lawful, then a court analyzes the

voluntariness of the defendant's consent, that is, whether the consent "is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances." ***Commonwealth v. Valdivia***, 195 A.3d 855, 862 (Pa. 2018) (internal citations and quotations omitted). However, if an unlawful seizure precedes the consensual search, the exclusionary rule will require suppression of evidence unless there is "a sufficient break in the causal chain[,]" *i.e.*, that the search did not exploit the prior illegality, and the consent was voluntary. ***Strickler***, 757 A.2d at 889 (internal citation omitted). In examining the lawfulness of an interaction between police and an individual, our Supreme Court has stated:

> We have long recognized three types of interactions that occur between law enforcement and private citizens. The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.

> No bright lines separate these types of encounters, but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often

- 5 -

referred to as the "free to leave test," requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person.

*See Commonwealth v. Adams*, 205 A.3d 1195, 1199-200 (Pa. 2019)

(internal citations, some quotations, and brackets omitted).

Additionally, where an officer completes an initial, lawful detention of an

individual and then asks for consent, a court must review all coercive aspects

of the subsequent interaction, including factors such as:

1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, . . . thus suggesting to a citizen that his movements may remain subject to police restraint; 9) the presence of an express admonition to the effect that the citizen-subject is free to depart is a potent, objective factor; and 10) whether the citizen has been informed that he is not required to consent to the search.

*Commonwealth v. Moyer*, 954 A.2d 659, 665 (Pa. Super. 2008) (*en banc*)

(internal citations and quotations omitted);[5] *accord Commonwealth v.*

*Freeman*, 757 A.2d 903, 906-07 (Pa. 2000).

_____

[5] The above factors may overlap when considering whether a seizure occurred and whether an individual voluntarily consented to a search, because both issues require a consideration of the objective circumstances surrounding an
*(Footnote Continued Next Page)*

On appeal, Brooks does not dispute that Officer Gamber had reasonable basis to order him out of the car, frisk him, and determine whether he was intoxicated. *See* Brooks's Brief at 19-20. However, Brooks argues that once the officer determined he was sober, the purpose of the initial detention was complete, and he should have been allowed to leave. *See id*. at 20. The continuing interaction with Officer Gamber, along with the arrival of the three backup officers, Brooks asserts, amounted to an unlawful detention that coerced his consent. *See id*. Brooks concludes that he was entitled to suppression of the evidence found in the car, because "[c]onsent is not voluntary where the suspect is surrounded by police and subject to accusatory questioning." *See id*. at 20.

The trial court explained its denial of Brooks's suppression motion noting that Officer Gamber had reasonable suspicion to believe that Brooks "was involved in nefarious activities" when the officer frisked Brooks. Trial Court Opinion, 4/5/22, at 5. However, the court concluded that Brooks "was free to leave the scene" when Officer Gamber later requested consent to search the car. *See id*.

We disagree with the trial court's "free to leave" analysis. At the suppression hearing, Officer Gamber testified that he woke Brooks up by banging on the car window for approximately one minute, and then asked

_____

interaction between a police officer and the individual giving consent. *See* *Commonwealth v. Carmenates*, 266 A.3d 1117, 1124 (Pa. Super. 2021) (citing *Strickler*, 757 A.2d at 901-02).

Brooks to exit the vehicle. Brooks complied, and the officer frisked him. ***See*** N.T. Suppression Hearing, 8/15/19, at 12-13. After the frisk, Officer Gamber began asking Brooks why he was in the area and Brooks replied that he was visiting his grandmother. ***See id***. at 13. The officer and Brooks then had an exchange about the location of his grandmother's home. Brooks was unable to give the officer "a straight answer as to where it was or what he was doing in the area." ***Id***. at 13-14. During these discussions, Officer Gamber concluded that Brooks was not intoxicated. ***See id***. at 20. Approximately five minutes after Officer Gamber began interacting with Brooks, three backup officers arrived in marked patrol cars. ***See id***. at 14, 24. Officer Gamber "identified"[6] Brooks when the backup officers arrived and then asked him for verbal consent to search the vehicle. ***Id***. at 14. Officer Gamber testified that when he requested Brooks's consent to the search the car, Brooks was free to leave; however, he did not expressly say so. ***See id***. at 23-24.

Following our review of the record, we conclude that when Officer Gamber requested consent to a search the interaction constituted a seizure not a mere encounter. Brooks was clearly detained when the officer ordered

---

[6] The Commonwealth elicited no testimony about how Officer Gamber identified Brooks, and at no point during the suppression hearing did Officer Gamber state that he requested or obtained any paperwork or identification cards from Brooks.

him out of the car and frisked him.[7] The Commonwealth failed to adduce any evidence about when, during his continuing interactions with Brooks, Officer Gamber concluded that Brooks was not impaired. Moreover, there was no meaningful break or "endpoint" that separated the initial detention of Brooks from the officer's continued questioning of Brooks. *See Freeman*, 757 A.2d at 906-07. The transitions from the frisk to the point at which Officer Gamber believed Brooks was free to leave were relatively quick and seamless, such that a reasonable person would not have felt "free to leave," ignore Officer Gamber's questions, or simply disregard the request for a consensual search. *See Moyer*, 954 A.2d at 665, 669. Thus, the trial court erred when it determined that Brooks was "free to leave" when Officer Gamber asked for his consent, and we conclude that Brooks was subject to an investigative detention when the officer asked for his consent. *See id*.

We next consider whether the seizure was lawful. Because Brooks does not assert that his interactions with Officer Gamber and the three backup officers escalated to a functional equivalent of arrest, *see* Brooks's Brief at 19 (arguing that Officer Gamber "unlawfully detained" Brooks), we assess whether there was reasonable suspicion to support an investigative detention when Brooks consented to the search.

_____

[7] The trial court and the parties do not dispute that Officer Gamber had detained Brooks during this phase of the interaction. *See* Trial Court Opinion, 4/5/22, at 5.

In assessing whether a detaining officer has reasonable suspicion to conduct an investigative detention, we employ the following standard:

> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 306 (Pa. Super. 2011). Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. *See Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010). The totality of the circumstances test requires consideration of **all** information obtained by an officer during a lawful interaction. *See In Interest of A.A.*, 195 A.3d 896, 910 (Pa. 2018) (holding that information learned during a valid traffic stop may be considered to determine whether an officer had a lawful basis to initiate a second detention after the traffic stop), *abrogated on other grounds by Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021).

Brooks, as noted above, argues that any basis for prolonging the initial detention or initiating a subsequent detention had dissipated and that "the power to detain [him] and the vehicle was exhausted" when Officer Gamber

determined he was not intoxicated. Brooks's Brief at 20. Brooks baldly asserts that "[a] perceived expensive watch, two cell phones, whether in a high crime area or not, fall far short on the reasonable suspicion required to warrant" extending or initiating a new investigative detention. *See id*. at 19-20.

The record here shows that Officer Gamber found Brooks sleeping in a running rental car that was parked in a fire zone. *See* N.T. Suppression Hearing, 8/15/19, at 7-8. After waking Brooks, frisking him, and feeling two cellphones in Brooks's pocket, Officer Gamber asked why Brooks was in the area. *See id*. at 12-13. While Brooks indicated he was going to visit his grandmother, he was not able to give his grandmother's address or point out her home. *See id*. at 13-14. During this interaction, the officer noticed Brooks was wearing an expensive watch. *See id*. at 12. At the suppression hearing, the officer summarized his suspicions as follows:

> His story didn't add up. It didn't make sense what he was doing in the area. He wasn't -- gave me -- able to . . . give me a straight answer to where his grandmother lived. I thought it was odd that he would visit a grandparent or someone of that age at 3:00 in the morning. It was a high crime area. He had multiple cell phones on his person. He had a very expensive watch. It was a rental car. All these details lead me to believe that he wasn't being truthful with me and there was something more to what was going on than he was leading on.

N.T., Suppression Hearing, 8/15/19, at 16-17. Officer Gamber testified that he only identified Brooks after the three backup officers arrived. *See id*. at 14.

- 11 -

Following our review, we conclude that Brooks's argument that Officer Gamber lacked reasonable suspicion to detain him after determining he was not intoxicated merits no relief. Brooks's attempt to limit the scope of the investigative detention and the facts obtained by Officer Gamber is too narrow. Having come upon Brooks asleep in a running car, illegally parked in a fire zone at 3:00 a.m. in a high crime area, Officer Gamber had an objectively reasonable basis to briefly detain and question Brooks to confirm his identity, determine why he was in the area and his possible travels, in addition to his possible level of intoxication. Moreover, when assessing the totality of the circumstances, this Court will not separate out the information obtained during a lawful interaction when determining reasonable suspicion continued to exist to continue or re-initiate an investigative detention. *See In Interest of A.A.*, 195 A.3d at 910. Thus, Brooks's argument contravenes the proper application of the totality of the circumstances test and fails to demonstrate that Officer Gamber lacked reasonable suspicion to briefly detain and question him about the reasons for his sleeping in his car.

Our final consideration in assessing the trial court's suppression ruling is whether Brooks's consent was voluntary. *See Valdivia*, 195 A.3d at 862. Although we have concluded that Brooks was subject to an investigatory detention, we agree with the trial court that the Commonwealth established that his consent was not the result of duress or coercion, express or implied, under the totality of the circumstances. *See Commonwealth v. Cartagena*,

- 12 -

63 A.3d 294, 301 (Pa. Super. 2013) (noting that a suppression court's legal conclusion are not binding on this Court and that this Court may affirm on any ground). The record shows that Officer Gamber and the three backup officers were at the scene in full uniform when Officer Gamber requested Brooks's consent to search the car. However, none of the officers had activated their emergency lights. *See* N.T. Suppression, 8/15/19, at 14-16. The three backup officers also remained behind Brooks's car at a distance of about five to six feet. *See id*. at 16. None of the backup officers interacted with Brooks or had positioned themselves, or their vehicles, to block or physically control Brooks's movements. *See id*. at 28-29. Officer Gamber testified that throughout the investigative detention of Brooks, their interactions were cordial. *See id*. at 16. Officer Gamber testified that after the frisk, he did not physically touch or control Brooks's movements or restrain him in any manner. *See id*. at 15-16, 24. Although the officer and Brooks were standing face to face, at no time did Officer Gamber draw his firearm or threaten Brooks. *See id*. at 16. According to Officer Gamber, Brooks did not hesitate in giving his consent and affirmatively stated that the officer could "search the vehicle." *Id*.

Based on this record, we agree with the trial court's conclusion that Brooks's consent was voluntary under the totality of the circumstances. *See* Trial Court Opinion, 4/5/22, at 6. Brooks's general assertion that his consent was invalidated by the nature of his interactions with Officer Gamber and the

mere presence of three other officers alone fails to convince this Court that the overall nature of a lawful detention was so coercive that his will was overborne.[8]  Rather, there was ample support for the court to conclude that Brooks's consent was the product of a free and unconstrained choice.  Thus, we affirm the order denying Brooks's suppression motion.

In his next issue, Brooks claims that the evidence was insufficient to prove his possession of the contraband recovered from the car.  Our standard of reviewing a challenge to the sufficiency of the evidence is as follows:

> We assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner.  We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for that of the factfinder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may

---

[8] Brooks also emphasizes that Officer Gamber did not advise him that he was free to leave and did not obtain a written consent to search.  While such factors may weigh heavily, Pennsylvania law does not regard any one factor to be dispositive when considering the nature of interaction or the voluntariness of consent.  *Cf. Commonwealth v. Cleckley*, 738 A.2d 427, 433 (Pa. 1999) (emphasizing that although knowledge of the right to refuse a search is a factor, a court's focus must be on the totality of the circumstances).  We add that this Court has determined that a consent to a search was voluntary under circumstances that could be considered more coercive than those present here.  *See e.g. Commonwealth v. Benitez*, 218 A.3d 460, 483 (Pa. Super. 2016) (affirming the trial court's finding that consent was voluntary despite the presence of multiple police officers); *Commonwealth v. Rosas*, 875 A.2d 341, 345, 349-50 (Pa. Super. 2005) (holding that Rosa's consent was voluntary despite the presence of two state troopers and Rosa being in handcuffs following a traffic stop).

be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Bowens*, 265 A.3d 730, 740-41 (Pa. Super. 2021) (internal citation omitted), *appeal denied*, 279 A.3d 508 (Pa. 2022)

A conviction for PWID requires the Commonwealth to prove that the defendant "knowingly or intentionally possessed a controlled substance without being properly registered to do so, with the intent to manufacture, distribute, or deliver it." *Commonwealth v. Dix*, 207 A.3d 383, 390 (Pa. Super. 2019); *see also* 35 P.S. § 780–113(a)(30). Possession may be established by the defendant's actual or constructive possession of a controlled substance. *See Bowens*, 265 A.3d at 741. To establish constructive possession, the evidence must show a nexus between the defendant and the item sufficient to infer that he had the power and intent to exercise dominion and control over it. *See id*. "Dominion and control means the defendant had the ability to reduce the item to actual possession immediately, or was otherwise able to govern its use or disposition as if in physical possession." *Id*. (internal citation omitted).

Brooks asserts that the Commonwealth failed to establish possession because he was not in actual possession of the "narcotics that were secreted inside of the rental vehicle" and the evidence failed to establish constructive possession. Brooks's Brief at 29. He argues that the trial evidence established

- 15 -

that he was fully cooperative with the police, which is "more consistent with innocence rather than guilt" because it "belies common sense that a person who knowingly was in possession of contraband would freely and willingly give consent" for a search. *Id*. at 30.

Following our review, we discern no merit to Brooks's argument. The trial record established that Brooks was the sole occupant of a rental car and fell asleep in the driver's seat with the car still running. *See* N.T. Trial, 7/23/21, at 29-30. The drugs, while hidden, were located underneath the master switch assembly on the armrest located on the driver's side door. *See id*. at 34-35. The master switch assembly was already loose and portions of the plastic bag containing the drugs was visible. *See id*. at 34-36. Moreover, as noted by the trial court other evidence linked Brooks to the car and the trafficking of drugs, including the presence paraphernalia consistent with packaging drugs, as well as large amounts of cash and a customer list located in a duffel bag that also contained Brooks's identification card. *See* Trial Court Opinion, 4/5/22, at 9; *see also* N.T. Trial, 7/23/21, at 38-39, 55, 122, 124. Thus, there was ample circumstantial evidence proving Brooks's constructive possession of the drugs found in the driver's side arm rest. Brooks's arguments that no guilty person would have cooperated with the police or consented to a search of the vehicle go to the weight rather than sufficiency of the evidence. Thus, Brooks's challenge to the sufficiency of the evidence fails. *See Dix*, 207 A.3d at 390.

Brooks's third issue challenges the discretionary aspects of the trial court's sentence. Before addressing this issue, however, we consider the Commonwealth's suggestion that the trial court's imposition of an illegal sentence renders this issue moot. *See* Commonwealth's Brief at 16-17.

This Court may address the legality of a sentence *sua sponte* and remand the matter to the trial court even in the absence of the preservation of the claim. *See Commonwealth v. Mitchell*, 986 A.2d 1241, 1244 n.3 (Pa. Super. 2009). Where the trial court imposes a sentence of total confinement under the Sentencing Code, the court must state a maximum sentence and a minimum sentence, which specifies the date on which the defendant, once jailed, is eligible for parole. *See Commonwealth v. Basinger*, 982 A.2d 121, 127 (Pa. Super. 2009). The Sentencing Code mandates that the minimum sentence imposed "shall not exceed one-half of the maximum sentence imposed." 42 Pa.C.S.A. § 9756(b)(1). Absent a contrary provision of law, the failure to comply with section 9756(b)(1) goes to the legality of the sentence. *See Mitchell*, 986 A.2d at 1244.

In the case *sub judice*, the trial court imposed a minimum sentence of seventy-two months of imprisonment for PWID (fentanyl), and a maximum sentence of 114 months. Because the minimum sentence is more than one-half of the maximum and no contrary provision of law applied, that sentence violates section 9756(b)(1) and must be vacated. *See Mitchell*, 986 A.2d at 1244. Furthermore, because the trial court imposed consecutive sentences,

- 17 -

our decision affects the overall sentencing scheme. Therefore, we vacate the judgment of sentence and remand this matter for resentencing. Because we vacate and remand due to the illegal sentence, we decline to address Brooks's discretionary aspect of the sentence claim. ***See Commonwealth v. Conley***, --- A.3d ---, ---, 2022 WL 17098985, at *7 & n.15 (Pa. Super. 2022).

In sum, we affirm Brooks's convictions for PWID, but vacate the judgment of sentence and remand this matter for resentencing.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judge King joins in this decision.

Judge Kunselman concurs in the result.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


*Date: 3/23/2023*