J-S33040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LUIS RODRIGUEZ-MORALES :
:
Appellant : No. 667 EDA 2021

Appeal from the Judgment of Sentence Entered March 17, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002124-2020

BEFORE: BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED FEBRUARY 8, 2022**

Luis Rodriguez-Morales appeals from the judgment of sentence entered

on March 17, 2021, following his convictions for disorderly conduct and

harassment.[1] Rodriguez-Morales challenges the sufficiency of the evidence to

sustain his convictions. We affirm.

The trial court accurately summarized the facts as follows:

> On January 8, 2020, Stacy Vibbert, a City of Allentown
> paramedic, was working night shift when she and her
> partner were dispatched to 5340 North Fountain Street,
> Allentown, Lehigh County, Pennsylvania for a report of an
> unconscious person who had possibly overdosed. Upon
> responding to the scene, Ms. Vibbert and her partner were
> escorted to a bathroom where she observed a male whom
> she identified as [Rodriguez-Morales] lying on the floor with
> a syringe nearby. After checking [Rodriguez-Morales] for
> signs of responsiveness, he was administered Narcan and

_____

[1] 18 Pa.C.S.A. § 5503(a)(4) and 18 Pa.C.S.A. § 2709(a)(1), respectively.

was transported by ambulance to St. Luke's Sacred Heart Hospital at Fourth and Chew Street in Allentown.

Ms. Vibbert credibly testified that after arriving at the hospital, but while everyone was still in the ambulance, [Rodriguez-Morales] began talking to Ms. Vibbert and her partner. He asked questions about where he was. [Rodriguez-Morales] initially tried to get off the stretcher by himself, but Ms. Vibbert and her partner asked him to lie down for his own safety so he could be moved into the hospital. She testified [Rodriguez-Morales] looked like he was going to spit or throw up, so she went to provide him with a bag. [Rodriguez-Morales] took the bag, told her "I'm not going to throw up," and then spit on the stretcher. He was told that if he had to spit, he needed to use the bag, but he again spit on the stretcher.

After that, [Rodriguez-Morales] settled down and became more compliant. However, while being wheeled into the hospital on the stretcher, [Rodriguez-Morales] spit off the side of the stretcher and onto the floor. He was again admonished to use the bag if he had to spit, and he then proceeded to spit into the bag. While Ms. Vibbert and her partner prepared to move [Rodriguez-Morales] from the stretcher into his hospital bed, [Rodriguez-Morales] propped himself up on his elbows, arched his head backwards, and spit in Ms. Vibbert's face. Ms. Vibbert testified that the substance that hit her face was a combination of blood and saliva. Because of this incident, Ms. Vibbert testified that she had to undergo six months of blood tests due to possible exposure.

Trial Court Opinion, filed April 30, 2021, at 2-3.

A non-jury trial was held on January 29, 2021 and the court found Rodriguez-Morales guilty of the aforementioned offenses. Rodriguez-Morales was sentenced to a cumulative period of probation for 12 months, with the first 90 days to be served on house arrest. This timely appeal followed.

Rodriguez-Morales raises the following two issues for our review:

1. Was the evidence insufficient to prove beyond a reasonable doubt that [Rodriguez-Morales] committed misdemeanor disorderly conduct where the Commonwealth presented no evidence [Rodriguez-Morales'] conduct occurred in "public," that he possessed the requisite *mens rea*, or that his alleged disorderliness satisfied a misdemeanor-level conviction?

2. Was the evidence insufficient to prove beyond a reasonable doubt that [Rodriguez-Morales] committed summary harassment where the act of spitting is not the type of conduct criminalized by the statute?

Rodriguez-Morales' Br. at 4.

Our standard of review when reviewing a challenge to the sufficiency of the evidence is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *Commonwealth v. Rushing*, 99 A.3d 416, 420-421 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *Commonwealth v. Dix*, 207 A.3d 383, 390 (Pa.Super. 2019). Further, the trier of fact is free to believe, all, part, or none of the evidence presented when making credibility determinations. *Commonwealth v. Beasley*, 138 A.3d 39, 45 (Pa.Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder,

- 3 -

and where the record contains support for the convictions, they may not be disturbed." ***Commonwealth v. Smith***, 146 A.3d 257, 261 (Pa.Super. 2016).

Rodriguez-Morales first contends that the evidence was insufficient to support his conviction for disorderly conduct because the Commonwealth failed to prove that his conduct occurred in "public," within the meaning of the statute. Rodriguez-Morales' Br. at 10.

Disorderly conduct is defined as follows:

> **(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> ***
>
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503(a)(4).

Rodriguez-Morales argues that "the Commonwealth presented no evidence that the location of [Rodriguez-Morales'] spitting was in an area 'open to the public,' or 'to which the public or a substantial group ha[d] access'" as required by 18 Pa.C.S.A. § 5503(c). Rodriguez-Morales' Br. at 13 (emphasis omitted). Rodriguez-Morales contends that the emergency room of a hospital is an area in a hospital which has some sections accessible to the public while other sections are not, and that the public does not have unfettered access to every area inside a hospital. ***Id.*** at 13-14. According to Rodriguez-Morales, "the Commonwealth presented no evidence as to the

location of the hospital bed which was the site of [his] spitting in Ms. Vibbert's face." *Id.* at 15.

Rodriguez-Morales' argument is unavailing. The disorderly conduct statute requires that the defendant have acted "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof. . . ." 18 Pa.C.S. § 5303(a). For purposes of this statute, "public" means "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." 18 Pa.C.S.A. § 5503(c).

We have found the statutory definition of "public" met in cases involving areas of a premises not primarily accessible to the general public, so long as the area at issue was accessible to a substantial portion of the public. *See Commonwealth v. O'Brien*, 939 A.2d 912, 914 (Pa.Super. 2007) (holding private road met definition, as "'a place to which the public or a substantial group,' namely the surrounding community's residents and their invitees" had access); *Commonwealth v. Whritenour*, 751 A.2d 687, 688 (Pa.Super. 2000) (finding that a road in a private gated community met definition because "residents of the homes in the community, their guests and employees, as well as visitors attending religious events, users of the public library located in the community, and delivery people of all kinds" used it).

Here, Vibbert testified that as she and a coworker were wheeling Rodriguez-Morales into the emergency room, Rodriguez-Morales spat on the floor, even though Vibbert had previously told him that if he needed to spit to use a bag provided for that purpose. Vibbert stated that in addition to her partner, hospital staff members were present in the emergency room giving instructions on where to take Rodriguez-Morales and how to care for him. She said that Rodriguez-Morales then proceeded to spit again, in the hospital hallway, and later in Vibbert's face in the hospital room. N.T., 1/29/21, at 18-19, 21.

Accordingly, there was sufficient evidence for the court to find that the evidence satisfied the statutory definition of "public." A hospital emergency room and adjoining areas are held open generally to the public. Rodriguez-Morales' reliance on **Commonwealth v. Lawson**, 759 A.2d 1, 5 (Pa.Super. 2000), is misplaced. That case involved a party in a private apartment open only to the renters and their invited guests. Rodriguez-Morales' first issue lacks merit.

Rodriguez-Morales next argues that the Commonwealth failed to present sufficient evidence that he possessed the requisite *mens rea* for disorderly conduct. Rodriguez-Morales argues that his actions were the result of his physical condition at the time since he had just overdosed and had been administered Narcan. Rodriguez-Morales' Br. at 16-17.

"The *mens rea* requirement of [section 5503] demands proof that appellant by his actions intentionally or recklessly created a risk or caused a

public inconvenience, annoyance or alarm." ***Commonwealth v. Troy***, 832 A.2d 1089, 1094 (Pa.Super. 2003) (quoting ***Commonwealth v. Gilbert***, 674 A.2d 284, 286 (Pa.Super. 1996)). The Commonwealth may meet the intent requirement of disorderly conduct "by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." ***Id.*** (citing ***Commonwealth v. Kidd***, 442 A.2d 826, 827 (Pa.Super. 1982) (internal quotation mark omitted).

Here, the evidence showed that although Rodriguez-Morales overdosed and was administered Narcan, he was conscious, alert and engaged in conversation with Vibbert and her partner while in the hospital's parking lot prior to his multiple spitting instances. N.T. at 15-17, 35-37. As the trial court pointed out, this was not a situation where Rodriguez-Morales had an immediate adverse reaction to the Narcan that was administered. Rather, Rodriguez-Morales spat on the stretcher after he awoke in the ambulance and later did so again on the floor of the emergency room, before spitting directly into Vibbert's face. ***Id.*** at 17-18, 36, 39. When he spat into Vibbert's face, he propped himself up on his elbows, arched his head backwards, and spat directly at her. ***Id.*** at 18-19, 40. This evidence was sufficient for the trial court to conclude that Rodriguez-Morales intentionally caused, or recklessly created, "a hazardous or physically offensive condition" that served "no legitimate purpose." ***See*** 18 Pa.C.S.A. § 5503(a)(4).

His final challenge to his disorderly conduct conviction is to the grading. He maintains that the trial court improperly graded his offense as a misdemeanor of the third degree because, according to Rodriguez-Morales, "there was no warning or request to desist after [he] persisted in disorderly conduct." Rodriguez-Morales' Br. at 18.

Rodriguez-Morales misstates the proof required in order to grade disorderly conduct as a misdemeanor. Disorderly conduct is a misdemeanor of the third degree if the defendant's intent was "to cause substantial harm or serious inconvenience," or if the defendant "persists in disorderly conduct after reasonable warning or request to desist." 18 Pa.C.S.A. § 5503(b). Otherwise the conviction is a summary offense. *Id.* The evidence here was sufficient to satisfy that element because Vibbert testified that she twice told him to spit in the bag provided, after Rodriguez-Morales spit in the ambulance and again on the floor in the hospital. Despite those requests, he nonetheless spit blood and saliva in her face.

Rodriguez-Morales' final argument is that there was insufficient evidence to convict him of harassment. He contends that the act of spitting is not the type of physical contact meant by the harassment statute. Rodriguez-Morales' Br. at 18.

The crime of harassment occurs when a person, with intent to harass, annoy or alarm another, "strikes, shoves, kicks or otherwise subjects the other person to physical contact," or attempts or threatens to do so. 18 Pa.C.S.A. § 2709(a)(1). Rodriguez-Morales cites a canon of statutory construction known

as *ejusdem generis*, which states that "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." ***Commonwealth v. Scott***, 176 A.3d 283, 288 (Pa.Super. 2017). On this basis he argues that spitting is not "physical contact" for purposes of the harassment statute, because it is not of the same type, nature or class as striking, shoving, or kicking. Rodriguez-Morales' Br. at 19.

The principle of *ejusdem generis* is found in the Statutory Construction Act. ***See*** 1 Pa.C.S. § 1903(b) ("General words shall be construed to take their meanings and be restricted by preceding particular words"). The Statutory Construction Act provides that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). However, the Act also directs us, in performing those tasks, to presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). We also may not disregard the plain meaning of statutory language in pursuit of the statute's supposed spirit. 1 Pa.C.S. § 1921(b).

Rodriguez-Morales does not explain the limitation or category that he believes "strikes, shoves, kicks" represents or the way in which spitting is not in the same class as striking, shoving, and kicking. His argument is undeveloped, and he has therefore waived it. ***See Commonwealth v. Thomas***, 215 A.3d 36, 51 (Pa. 2019) (finding argument waived where

- 9 -

appellant failed to explain his bare assertion of prejudice). Even if we were to speculate that Rodriguez-Morales means to say that spitting is different from striking, shoving, and kicking because it is not sufficiently violent, or because it is an action through an instrumentality rather than direct contact, we would reject those arguments. Requiring a degree of violence would run counter to the plain meaning of "physical contact." And precluding an action through an instrumentality would be unreasonable and absurd. If such were the case, the General Assembly would be permitting a person to engage in conduct that would amount to harassment but avoid conviction so long as any "physical contact" was achieved through an instrumentality, such as spit.

Rodriguez-Morales caused his saliva and blood to come into physical contact with Vibbert's face. The trial court credited Vibbert's testimony that Rodriguez-Morales was conscious and alert when he disregarded the instructions to spit in the bag and instead intentionally spat in Vibbert's face. Trial Ct. Op. at 10. Rodriguez-Morales' conscious decision to spit bodily fluids onto another person satisfies the "physical contact" element of the harassment statute. His final claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2022

- 10 -