J-A04028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY BURROUGHS | : | |
| | : | |
| Appellant | : | No. 509 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 26, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006385-2021

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MAY 9, 2024**

Anthony Burroughs appeals from the judgment of sentence entered following his conviction for possession of a firearm by a prohibited person. 18 Pa.C.S.A. § 6105(a)(1). He claims the trial court erred in precluding an attack on a hearsay declarant's credibility and in finding the admission of hearsay did not violate the Confrontation Clause. He also challenges the sufficiency of the evidence. We affirm.

The trial court the summarized the factual history, as presented at the non-jury trial, as follows:

> State Parole Agent Anthony Chapman (hereinafter Agent Chapman) testified while assigned to monitor Appellant he previously met with him and his wife, Tanya Hughes (hereinafter Ms. Hughes) at their home on . . . Woodstock Street, Philadelphia, PA. As such the Agent maintained communication with the couple and had each of their phone

---

[*] Retired Senior Judge assigned to the Superior Court.

numbers. On May 1, 2021 Agent Chapman received multiple missed calls from Ms. Hughes starting approximately 8:30 am. On the first answered call the Agent heard Ms. Hughes identify herself then state repeatedly "I need you to listen to Anthony, I need you to listen to Anthony." In the background Agent Chapman heard "a verbal altercation . . . and a male and female voice going back and forth" before the phone went dead. The Agent sent a text message to her number advising to call 911. Thereafter a second phone call followed from Ms. Hughes again stating, "I need you to listen." Agent Chapman heard [Burroughs] still screaming and "Miss Hughes then stated that he has a gun, he's waving it around." The verbal argument continued, and the Agent indicated "the one statement that really stood out, he said it multiple times, 'Bitch, I will choke you out' . . . ." Agent Chapman remained on the phone with Ms. Hughes and contacted 911 with the . . . address. On cross-examination Agent Chapman denied knowledge of anyone else by the name of Anthony residing at this location.

Police Officer Paul Luig (hereinafter Officer Luig) arrived at the residence . . . on May 1, 2021 and heard a commotion behind the door then knocked. He separated [Burroughs] and Ms. Hughes who were there at the door, sending [Burroughs] to talk with the other officers. Officer Luig then recovered the firearm from the floor of the kitchen. The house was cleared to secure the scene and another man was found on the second floor in the back bedroom.

Detective Taulant Xhelo testified that he swabbed the firearm found in the residence . . . for DNA evidence and placed the information on the appropriate property receipt. There was a stipulation by and between counsel as to the DNA swab of [Burroughs] and corresponding property receipt.

Forensic Scientist Diana Zarzecki (hereinafter Scientist Zarzecki) testified that the DNA comparison of the sample from the firearm "is consistent with a mixture originating from at least four individuals, at least one of whom is male. The major component of the DNA mixture detected in the sample is consistent with the DNA profile obtained from Anthony Burroughs. Excluding an identical twin, Anthony Burroughs is the source of the major component of the DNA mixture detected in the sample." Scientist Zarzecki

expressed this opinion to a reasonable degree of scientific certainty.

[Burroughs] testified he resided at the Woodstock address for two months and Agent Chapman only cleared the first level of the home (the living room and kitchen) when he approved this location for parole. At time of the inspection [Burroughs] resided with Ms. Hughes, and two adult males: another also named "Anthony" and Matthew who were "some of her people." On the date of the incident, Ms. Hughes was getting high with Matthew when she mentioned "hurting herself" due to [Burroughs'] infidelities. [Burroughs] testified that Ms. Hughes had a gun that he was trying to get out of her hand. Once he removed the gun from her hand they began to argue, and she called his [parole officer]. [Burroughs] further stated Ms. Hughes had the gun around him as a way of getting him back in jail because he was cheating on her.

Trial Court Opinion, filed Apr. 21, 2023, at 2-4 (citations to record omitted).

Prior to trial, Burroughs filed a motion *in limine* seeking to preclude Agent Chapman from testifying as to Hughes's statements. He argued the statements were inadmissible hearsay and the admission would violate his right to confront witnesses, as Hughes was not going to testify. The court denied the motion.

During trial, Burroughs attempted to testify regarding his bank account, but the questioning ceased after the Commonwealth raised a relevancy objection:

[Defense counsel]: . . . Did you have any joint bank accounts with [Hughes]?

[Burroughs]: No, I did not.

[Commonwealth]: Objection, relevance[.]

[Defense counsel]: Okay. If I may, Your Honor. I'll make it relevant.

- 3 -

The Court: Hold on.

[Defense counsel]: I could lay a foundation for it.

[Defense counsel]: After – did you get arrested right away?

[Burroughs]: Yes, I got arrested the same day.

[Defense counsel]: And at that time, how much money did you have in your bank account?

The Court: He said they didn't have any joint bank accounts.

[Defense counsel]: I'm aware.

The Court: Okay.

[The Commonwealth]: Your Honor, I'm just going to object again to relevance at this point. It does not go to the defendant possessing a firearm or being ineligible to possess it. It's not relevant to the charge.

[Defense counsel]: Your Honor, I think it does go to the credibility to the person who's in the room, but not in the room.

The Court: The person – the credibility really can't be challenged because they're not here.

[Defense counsel]: Well, but it also goes to the motive, Your Honor.

The Court: I'm not really clear on what you're saying, [defense counsel].

[Defense counsel]: Well, because there [sic] a motive to lie about the situation with the gun.

The Court: [Defense counsel], there's information here, okay. You've established a story, okay.

[Defense counsel]: Okay.

N.T., Aug. 22, 2022, 66-67.

The trial court convicted Burroughs of possession of a firearm by a prohibited person. The trial court sentenced Burroughs to seven to 14 years'

incarceration followed by five years' probation. He filed post-sentence motions, which the trial court denied. Burroughs filed a notice of appeal.

Burroughs raises the following issues:

> I. Did the trial court err and abuse its discretion under Pennsylvania Rule of Evidence 806 by denying Mr. Burroughs the opportunity to impeach a hearsay declarant's credibility?
>
> II. Did the lower court err and abuse its discretion by denying Mr. Burroughs's motion in limine and permitting the Commonwealth to elicit hearsay testimony that violated his rights guaranteed by the Sixth Amendment to the United States Constitution?
>
> III. Was the evidence sufficient as a matter of law to sustain Mr. Burroughs's conviction of 18 Pa.C.S. § 6105, where he was justified in briefly possessing a firearm, and the Commonwealth did not present sufficient evidence to establish that he possessed the weapon before or after the incident?

Burroughs' Br. at 7.

In his first issue, Burroughs claims the trial court abused its discretion when it denied him an opportunity to impeach Hughes' credibility. He claims he wanted to establish that Hughes would have access to Burroughs' money if he was found with a gun and returned to jail. Burroughs claims the impeachment testimony was admissible under Pennsylvania Rule of Evidence 806,[1] which addresses attacking and supporting a declarant's credibility. He

---

[1] Rule 806 provides:

> When a hearsay statement has been admitted in evidence, the declarant's credibility may be attacked, and then

*(Footnote Continued Next Page)*

claims the Commonwealth admitted hearsay statements from Hughes through Agent Chapman, but the court denied him an opportunity to impeach Hughes. He further argues the error was not harmless, as the evidence was not so overwhelming that the inability to attack credibility could not have contributed to the verdict.

The trial court concluded that Burroughs' claim the court erred in sustaining the Commonwealth objection to Burroughs' testimony regarding the credibility of Hughes was "inaccurate and unsupported by the transcript." Trial Court Opinion, filed Apr. 21, 2023, at 4. It noted the Commonwealth objected to relevance, but stated it did not rule on the objection. Rather, after counsel explained that the testimony was to establish Hughes had a motive to lie, the court said, "[T]here's information here, okay. You've established a story, okay." *Id.* at 5 (citation omitted). The court explained that it had "gleaned that [Burroughs] was raising an issue involving Ms. Hughes and his bank account as evidence of motive that she would create the situation leading to his arrest for the firearm." *Id.* It also found that Burroughs provided "ample

_____

> supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it. If the party against whom the statement was admitted calls the declarant as a witness, the party may examine the declarant on the statement as if on cross-examination.

Pa.R.E. 806.

information" to supplement the theory, including his infidelity, her suicidal ideations, her drug use, and the argument between them. *Id.* The court found that the presentation lacked credibility, was not corroborated by the evidence, and was contradicted by the other witnesses' testimony and evidence. *Id.* at 5-6.

The record on its face shows that the trial court did not rule on the relevance objection. The court never sustained or overruled it. Instead, once defense counsel explained the purpose of the questioning, the trial judge – who was presiding over a bench trial – expressed that she understood counsel's point about Hughes' alleged motive to lie, stating, "You've established a story, okay." N.T., Aug. 22, 2022, 66-67. Afterward, defense counsel declined to pursue that line of questioning further, but the decision to do so cannot be laid at the feet of the trial judge. Defendant's argument lacks a foundation in the record.

Moreover, even if the court had sustained the objection, any error in doing so would have been harmless. An evidentiary issue is harmless where:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa. 2005) (citation omitted). The Commonwealth bears the burden of proving harmless error. *Id.* We may

also undertake harmless error review *sua sponte*. **See Commonwealth v. Hamlett**, 234 A.3d 486, 492 (Pa. 2020).

Here, any prejudice was *de minimis* because the trial judge understood the point defense counsel was making when questioning Burroughs about his bank accounts. **See** Trial Court Opinion, filed Apr. 21, 2023, at 5. Furthermore, we agree with the Commonwealth that it presented ample evidence that Burroughs possessed the firearm. It presented evidence that Agent Chapman testified to an escalating verbal altercation heard during the phone calls and that Hughes told him, "[H]e has a gun, he's waving it around"; the police officer found a gun on the kitchen floor and Burroughs and Hughes were the only people on the first floor when he arrived; Burroughs' DNA was a "major component" of the DNA found on the gun; and Burroughs provided evidence of Hughes' motive to lie when he admitted cheating on her and that they were arguing. Assuming *arguendo* that the court sustained the objection, any error in doing so was at most harmless.

Burroughs next claims the trial court abused its discretion when it denied his motion *in limine* to preclude the Commonwealth from admitting Hughes' statements to Agent Chapman. He claims the statements were testimonial because the circumstances, when considered objectively, indicated there was not an ongoing emergency. He points out that Hughes did not call 911, even after Agent Chapman told her to do so. He argues the statements' primary purpose was to establish past events relevant to later criminal prosecution. He argues that "[t]he context elucidates the motive behind Ms. Hughes's

statements," pointing to his testimony that he encountered her in the bedroom where she was smoking PCP, holding a gun, and threatening to hurt herself because of his infidelity and that, after he took the weapon from her, she called the parole agent. Burroughs' Br. at 24-25. He notes that Agent Chapman told Hughes to call 911 if she needed assistance, but she again called Agent Chapman, not 911. He further argues that the statements were not admissible, even though the court found they met the present sense impression exception to the hearsay rule.[2] He maintains that statements admissible under a hearsay exception remain inadmissible if they violate the Confrontation Clause. He further contends the error was not harmless.

Whether the admission of evidence violated an appellant's rights under the Confrontation Clause is a question of law, which we review *de novo*. **Commonwealth v. Yohe**, 79 A.3d 520, 530 (Pa. 2013).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The United States Supreme Court has "held that the Sixth Amendment guarantees a defendant's right to confront those who bear testimony against him, and defined 'testimony' as [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." **Yohe**, 79 A.3d at 531 (some quotation marks omitted). The Court explained that the Confrontation Clause "prohibits

---

[2] Burroughs does not challenge on appeal the statements' admissibility under the exception for present sense impressions.

out-of-court testimonial statements by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination." *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 53–56 (2004)).

Statements "are testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.*

When determining the primary purpose of an interrogation, "a court first should determine whether the interrogation occurred during the existence of an ongoing emergency, or what was perceived to be an ongoing emergency." *Commonwealth v. Allshouse*, 36 A.3d 163, 175 (Pa. 2012). "Although the existence—actual or perceived—of an ongoing emergency is one of the most important factors, this factor is not dispositive because there may be other circumstances, outside of an ongoing emergency, where a statement is obtained for a purpose other than for later use in criminal proceedings." *Id.* at 175-76. To determine the primary purpose of an interrogation, a court also must "objectively evaluate the circumstances surrounding the interrogation, including the formality and location, and the statements and actions of both the interrogator and the declarant." *Id.* at 176.

The trial court found it properly denied Burroughs' motion *in limine* seeking to prevent Agent Chapman from testifying as to Hughes' statements. It reasoned that Hughes' statements were non-testimonial and therefore not protected by the Confrontation Clause. It concluded the statements were not part of an interrogation and Hughes initiated the conversation from her home during an ongoing emergency.

The admission of Hughes' statements through Agent Chapman's testimony did not violate the Confrontation Clause. Looking objectively at the conversation between Hughes and Agent Chapman, the statements were made to assist in the emergency, not as the product of questioning seeking to establish past events for a possible criminal prosecution. Although Hughes could have called 911, her call to Agent Chapman does not transform the conversation from non-testimonial to testimonial. Burroughs attempted to establish that Hughes lied so that he would return to prison, and therefore the statements were looking to establish events not about an ongoing emergency. However, viewing the conversation objectively, Hughes' statements concerned an ongoing emergency—an argument involving a firearm that required police intervention. The court did not err in admitting the statements.

In his last claim, Burroughs argues that the evidence was insufficient as a matter of law to sustain the conviction because he was justified in briefly possessing the firearm. He argues he momentarily possessed the firearm when he took it from Hughes, who had threatened to hurt herself, and therefore the evil sought to be avoided was greater than that sought to be

prevented by the law. He argues the Commonwealth did not prove he exercised control over the weapon beyond what was necessary.

When reviewing a challenge to the sufficiency of the evidence, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Neysmith***, 192 A.3d 184, 189 (Pa.Super. 2018) (citation omitted). "When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in the light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt." ***Commonwealth v. Dix***, 207 A.3d 383, 390 (Pa.Super. 2019). The Commonwealth may sustain its burden "by means of wholly circumstantial evidence." ***Id.*** (citation omitted).

To sustain a conviction for Possession of a Firearm by a Prohibited Person, the Commonwealth must prove a person possessed, used, controlled, sold, transferred, or manufactured a firearm and had been convicted of a disabling offense. 18 Pa.C.S.A. § 6105(a)(1). The defense of justification can apply to a Section 6105 charge where the defendant's possession of a firearm occurred during a struggle with the victim. ***Commonwealth v. Miklos***, 159 A.3d 962, 968-69 (Pa.Super. 2017). However, the defendant must offer evidence that: (1) he was faced with a clear and imminent harm, not one which is debatable or speculative; (2) he could reasonably expect that his actions would be effective in avoiding this greater harm; (3) there was no legal alternative that would have been effective in abating the harm; and (4)

- 12 -

the General Assembly "has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue." ***Commonwealth v. Billings***, 793 A.2d 914, 916 (Pa.Super. 2002).

The trial court concluded sufficient evidence supported the conviction. It reasoned that the expert testimony established Burroughs' DNA was on the weapon, and pointed to Agent Chapman's and Burroughs' testimony that he handled the firearm. It found Burroughs' version of events, which Burroughs alleged proved the affirmative defense of justification, was not credible. It concluded Burroughs did not present any credible evidence to support the justification defense, as the evidence does not support a finding he faced a clear and imminent harm.

We agree with the trial court that the challenge to the sufficiency of the evidence lacks merit. The DNA evidence and testimony establish that Burroughs possessed the gun. The trial court, as fact-finder, found Burroughs' testimony as to justification not credible, and the record supports this finding. This claim lacks merit, as Burroughs did not show he was justified in his possession of the firearm.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/09/2024