J-S05038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARNELL THOMAS | : | |
| | : | |
| Appellant | : | No. 600 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 27, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003329-2022

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MARCH 24, 2025**

Appellant Darnell Thomas appeals from the judgment of sentence after the Court of Common Pleas of Delaware County convicted Appellant of several violations of the Uniform Firearms Act (VUFA) and tampering with evidence. Appellant contends that the trial court erred in granting the Commonwealth's motion for reconsideration and in denying his suppression motion.  We affirm.

The trial court set forth the factual background of this case as follows:

1. [On December 15, 2022, Appellant] filed a motion to suppress physical evidence seized by the police[].

2. [Appellant] alleges that his warrantless investigatory detention was illegal and that his discarding of his bag was a product of illegal police activity, constituting forced abandonment.

3. At the suppression hearing conducted on February 9, 2023, the Commonwealth presented testimony from

_____

[*] Former Justice specially assigned to the Superior Court.

Officer Michael Smalarz of the City of Chester Police Department. [Appellant] did not present any witnesses.

4. Officer Smalarz (hereinafter Smalarz) has been employed by the City of Chester Police Department for three years and previously worked at the Upper Chichester Police Department for fifteen years. He worked as an undercover officer in the Drug Task Force for six of those years.

5. On June 6, 2022, Smalarz was on duty in full uniform and operating a marked police vehicle in Chester, Delaware County, Pennsylvania, when he received a radio call from Officer Joseph Dougherty (hereinafter Dougherty), an off-duty Chester police officer.

6. Per the call, Dougherty allegedly encountered a group of ATVs that nearly struck his patrol vehicle and blew through a stop sign. He relayed that one of the drivers appeared to have the imprint of a firearm in his rear waistband area and one vehicle bared the number "36" on it.

7. This group of ATVs included 4-wheeled vehicles, dirt bikes, and motorcycles. Smalarz testified that Chester is currently experiencing a problem with non-registered ATVs riding throughout the city.

8. Smalarz testified that Sergeant Dingler (hereinafter Dingler) radioed concerning a motorcycle and a dirt bike pulling into Crosby Square Apartments. One of the vehicles allegedly had a "36" on it, so Smalarz and Sergeant William Carey (hereinafter Carey) responded to the area.

9. Smalarz testified that Crosby Square Apartments is a high-crime area. He regularly receives calls for disorderly groups, shots fired, and other similar activity.

10. When the officers arrived on scene at approximately 7:30 p.m., it was dusk, but the sun was still out.

11. Arriving without lights and sirens, [the] officers saw a group of individuals standing outside and heard talking behind the apartment building. When asked about any

ATVs, one of the individuals motioned towards the area behind the apartment.

12. Officers entered a grassy area that backed up to a fence with an embankment behind it. Officers saw two males, a motorcycle and a dirt bike. The dirt bike had the number "36" on it.

13. As Smalarz and Carey approached, one of the males, later identified as [Appellant], got off his red-and-white motorcycle and began walking backwards while removing clothing and a black bag from his person.

14. Officers had not yet identified themselves as police or asked the males to stop.

15. Smalarz then told [Appellant] to stop. Because the interaction took place in a high-crime area and the call concerned a firearm, Smalarz became concerned for his safety and drew his own firearm. Smalarz again asked [Appellant] to stop, multiple times, which he did not heed.

16. At that point, [Appellant] was able to throw the bag over the fence and into the embankment.

17. Officers detained [Appellant]. Smalarz later recovered the bag from the embankment and located a firearm inside.

Trial Court Opinion (T.C.O.), 4/20/23, at 1-3 (citations omitted).

After the suppression hearing, on March 7, 2023, the trial court entered an order initially granting Appellant's suppression motion as it found there was "no direct nexus linking" Appellant to the "initial group of ATVs." Order, 3/7/23, at 5. On March 13, 2023, the Commonwealth filed a motion for reconsideration, arguing that the trial court should have denied Appellant's suppression motion as the prosecution showed sufficient nexus between Appellant and the ATVs that nearly ran Officer Dougherty off the road and were suspected of carrying a firearm.

- 3 -

On March 17, 2023, the trial court granted the Commonwealth's motion for reconsideration and vacated its March 7, 2023 order. The trial court held an additional hearing on April 12, 2023. On April 20, 2023, the trial court entered an order and opinion denying Appellant's suppression motion.

Thereafter, Appellant waived his right to a jury trial and proceeded to a stipulated bench trial. On November 30, 2023, the trial court convicted Appellant of persons prohibited from possessing a firearm, possessing a firearm with an altered manufacturer number, carrying a firearm without a license, and tampering with evidence.

On January 17, 2024, the trial court sentenced Appellant to five to twelve years' imprisonment for the persons not to possess conviction, a concurrent term of four to eight years' imprisonment for possession of a firearm with an altered manufacturer number, a consecutive term of three years' probation for possessing a firearm without a license, and a concurrent term of one year of probation for the tampering conviction. Notes of Testimony (N.T.), 1/17/24, at 11-12. However, the trial court's sentencing order entered on January 17, 2024, incorrectly stated that Appellant's aggregate prison sentence was four to twelve years' imprisonment.

On March 20, 2024, the trial court entered an amended sentencing order which stated that the aggregate prison sentence was nine to twenty years' imprisonment. On June 27, 2024, the trial court entered a second amended sentencing order, clarifying that the trial court had ordered Appellant's prison

sentences to run concurrently which resulted in a total aggregate sentence of five to twelve years' imprisonment to be followed by three years' probation.

We first must evaluate whether the trial court was permitted to amend its sentencing order more than thirty days after the original judgment of sentence was entered. Our courts have recognized that:

> "[a] trial court has the inherent, common-law authority to correct 'clear clerical errors' in its orders." **Commonwealth v. Borrin**, 12 A.3d 466, 471 (Pa.Super. 2011) (*en banc*) (citation omitted), *affirmed,* 622 Pa. 422, 80 A.3d 1219 (2013) (opinion announcing judgment). This authority exists even after the 30–day time limitation for the modification of orders expires. **Id.,** *citing* 42 Pa.C.S.A. § 5505. We have previously concluded that a "clear clerical error" exists on the face of the record "when a trial court's intentions are clearly and unambiguously declared during the sentencing hearing[.]" **Borrin**, **supra** at 473; **see also Commonwealth v. Holmes**, 593 Pa. 601, 933 A.2d 57, 67 (2007) (concluding the limited, inherent judicial power of the court to correct patent errors arises in cases "involv[ing] clear errors in the imposition of sentences that [are] incompatible with the record"). When this situation arises, "the sentencing order [is] subject to later correction." **Borrin, supra** at 473.

**Commonwealth v. Thompson**, 106 A.3d 742, 766 (Pa.Super. 2014).

In this case, the trial court amended its original sentencing order more than thirty days after it had been entered. However, the trial court sought to correct patent mistakes in its sentencing order which were clearly erroneous when considering the sentence entered on the record in open court at the sentencing hearing. As noted above, the record shows that the trial court clearly and unambiguously declared at Appellant's sentencing hearing that it was imposing five to twelve years' imprisonment for possession of a firearm prohibited and a concurrent term of four to eight years' imprisonment for

possession of a firearm with an altered manufacturer number. N.T., 1/17/24, at 11-12. As such, the trial court was permitted to exercise its inherent authority to correct the sentencing order so it accurately reported Appellant's aggregate prison sentence as five to twelve years' imprisonment.[1]

On appeal, Appellant complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). In his 1925(b) statement, Appellant included the following issue:

> Whether the trial court erred in granting the Commonwealth's Motion for Consideration, vacating it's [sic] March 7, 2023 Order in favor of [Appellant's] Motion to Suppress, and finding [Appellant] guilty which provided the evidentiary basis for the stipulated trial and resulting conviction?

Rule 1925(b) statement, 4/25/24, at 1.[2]

The Commonwealth asks this Court to find that Appellant's 1925(b) statement was too vague to preserve any issues for review on appeal. The Commonwealth asserts that Appellant's 1925(b) lacked sufficient specificity to identify the issues Appellant wished to raise on appeal. We disagree.

It is well-established that "in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any

---

[1] The caption has been amended to reflect that the appeal properly lies from the trial court's second amended sentencing order filed on June 27, 2024. *See Commonwealth v. Garzone*, 993 A.2d 1245, 1254 n.6 (Pa.Super. 2010).

[2] Appellant's Rule 1925(b) statement also included a sentencing challenge, which he did not include or develop in any way in his appellate brief.

issues not raised in a 1925(b) statement will be deemed waived." ***Commonwealth v. Lord***, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998).

As such, a Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal." ***Commonwealth v. Sexton***, 222 A.3d 405, 413 (Pa.Super. 2019) (quoting ***Commonwealth v. Reeves***, 907 A.2d 1, 2 (Pa.Super. 2006)). In other words, "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." ***Commonwealth v. Dowling***, 778 A.2d 683, 686–87 (Pa.Super. 2001).

We emphasize that "the purpose of Rule 1925 is to facilitate appellate review and to provide the parties and the public with the legal basis for a judicial decision." ***Commonwealth v. Price***, 284 A.3d 165, 170 (Pa. 2022) (citations omitted). If the basis for the trial court's decision is evident from the record, the trial court need not issue an opinion explaining it." ***Commonwealth v. Rogers***, 666 Pa. 190, 215, 250 A.3d 1209, 1224 (2021) (citing Pa.R.A.P. 1925(a) (requiring an opinion only where "the reasons for the order [appealed from] do not already appear of record")).

In ***Commonwealth v. Laboy***, 594 Pa. 411, 936 A.2d 1058 (2007), the appellant filed a concise statement that set forth a challenge to the sufficiency of the evidence but did not provide details on the specific basis of the claim. The Supreme Court reversed this Court's finding that the appellant had waived this claim by failing to file a more specific concise statement. The Supreme

Court noted this Court should have afforded appellate review as the appeal involved a "relatively straightforward drug case" in which the trial transcript was only thirty pages and the trial court "readily apprehended [the a]ppellant's claim and addressed it in substantial detail."[3] *Id.* at 415, 936 A.2d at 1060. *See also Rogers*, 666 Pa. at 215, 250 A.3d at 1224 (finding the appellant's concise statement was not so vague to warrant waiver when his weight of the evidence claim was "readily understandable from context" and the trial court had "no difficulty apprehending the claim as set forth in the concise statement and addressing its substance").

Likewise, in this case, although Appellant's concise statement was arguably vague, Appellant's claim on appeal challenging the denial of his suppression motion was readily understandable from context as his sole argument in his suppression motion was that he was subjected to an illegal investigative detention. The trial court apprehended the claim Appellant was raising on appeal and indicated in its Rule 1925(a) opinion that it had fully discussed its rationale for denying Appellant's suppression motion in its April 20, 2023 opinion.

As the basis for the trial court's decision is evident from the record, the brevity of Appellant's concise statement does not prevent this Court from

---

[3] The Supreme Court acknowledged that "[i]t may be possible in more complex criminal matters that the common pleas court may require a more detailed statement to address the basis for a sufficiency challenge." *Laboy*, 594 Pa. at 415, 936 A.2d at 1060.

providing meaningful appellate review. As such, we decline to find waiver on the basis of Appellant's concise statement.

Appellant challenges the trial court's decision to deny his suppression motion in which he claimed that he was subjected to an illegal seizure of his person when police lacked the requisite suspicion to do so. We review a trial court's denial of a suppression motion under the following standard:

> [o]ur standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Johnson*, 146 A.3d 1271, 1273 (Pa.Super. 2016) (citation omitted).

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from being subjected to unreasonable searches and seizures. *Commonwealth v. Lyles*, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014). In light of these provisions, our

courts have developed three categories of interactions between citizens and police officers:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Way*, 238 A.3d 515, 518–19 (Pa.Super. 2020) (quoting *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super. 2012) (citation omitted)).

With respect to mere encounters, "a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification … [as the individual still retains] the right to ignore the police and go about his business." *Lyles*, 626 Pa. at 351, 97 A.3d at 303 (citations omitted). *See Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ("So long as a reasonable person would feel free 'to disregard the police and go about his business,' … the encounter is consensual and no reasonable suspicion is required") (citation omitted)).

Nevertheless, a mere encounter may escalate to an investigative detention if the individual objectively does not feel free to leave and disregard the officer's request. *Commonwealth v. Bathurst*, 288 A.3d 492, 497 (Pa.Super. 2023)). In determining whether a seizure has occurred, courts apply the following objective test:

- 10 -

[t]o guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave." *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889 (2000). In evaluating the totality of the circumstances, our focus is whether, "by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." *Id.* at 889. In making this determination, no single factor dictates "the ultimate conclusion as to whether a seizure has occurred." *Id.*

*Way*, 238 A.3d at 518–19.

Officers may subject a person to an investigative detention if they have reasonable suspicion that the individual is engaged in criminal activity. *Commonwealth v. Thomas*, 273 A.3d 1190, 1196–97 (Pa.Super. 2022) (citing *Commonwealth v. Cottman*, 764 A.2d 595 (Pa.Super. 2000)).

An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution.

To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

\* \* \*

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

- 11 -

***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

> "[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." ***Cottman***, ***supra*** at 598-99[.]

***Thomas***, 273 A.3d at 1196–97 (some citations omitted).

Appellant concedes that the officers did not need any level of suspicion to approach Appellant and his colleague at the apartment complex to ask general questions within a mere encounter without requiring any suspicion of wrongdoing. Appellant also acknowledges that the officers were permitted to conduct a limited investigative detention to resolve the issue of the traffic violations that had been reported.

However, Appellant argues that the officers' investigative detention was illegal as Officer Smalarz drew his firearm without any individualized suspicion that Appellant had been involved in criminal activity. Appellant argues that there was no reason for the officers to suspect that he had a firearm or was a threat to their safety as the reported firearm was tied to the rider of the dirt bike with a "36" on it, whereas Appellant had been seated on a motorcycle. Appellant also argues that his decision to discard the bag he had been carrying was a product of illegal police activity and resulted in forced abandonment, requiring suppression of the bag and its contents.

We agree with the trial court that the officers had reasonable suspicion to subject Appellant to an investigative detention. Law enforcement received

a report that a group of ATVs had nearly struck an off-duty officer and blew through a stop sign. The off-duty officer reported that the group was driving ATVs, dirt bikes, and motorcycles. Additionally, the off-duty officer suspected that one of the riders, who was driving a bike with a "36" on it, was carrying a firearm as the imprint of a weapon could be seen through his clothing.

The officers were able to quickly locate a group of ATVs that met the aforementioned description traveling to the Crosby Square Apartments, which was known to the officers as a high crime area where multiple shootings had been reported. Officers approached and noticed that Appellant was sitting on a motorcycle that was parked next to a dirt bike with a "36" on it.

We agree with the trial court's finding that there was a "direct nexus linking the initial group of ATVs [identified in the flash description] … to [Appellant's] presence behind the apartment building." T.C.O. at 8. A known off-duty law enforcement officer gave an accurate report of the group of ATVs containing specific detail which allowed officers to quickly respond to the area in question and confirm they had found the driver of the dirt bike marked with a "36." In their prompt investigation, the officers had reason to believe that they had located the group described in the dispatch report and that at least one of the group's members may have been armed.

As such, the officers had reasonable suspicion that Appellant was part of the group of ATVs that nearly struck the off-duty officer. We reject Appellant's suggestion that the police were required to ignore him and only permitted to focus on the dirt bike driver that was suspected to have a firearm.

Officers could not be certain of which individual was the person observed to have the imprint of a firearm in his clothing and noted that Appellant was in close proximity to the bike with the "36" on it.

Further, Appellant's own evasive actions upon the officers' arrival gave the police individualized cause for concern. The trial court specifically found that as the officers approached, Appellant "immediately began backing away from [Officer] Smalarz and removing layers of clothing, preparing to abandon his black bag prior to police announcing their intentions or drawing their weapons." T.C.O. at 8.

In similar circumstances, this Court has recognized that a defendant's "evasive movements in response to police presence in an area specifically known for high levels of crime and violence" may support an inference of reasonable suspicion. *Commonwealth v. Thomas*, 179 A.3d 77, 83–84 (Pa.Super. 2018) (finding the appellant's evasive movements and his refusal to comply with the officers' request to remove his hands from his pockets gave officers reasonable suspicion to frisk the appellant for the officers' safety).

To the extent that Appellant argues that it was unreasonable for the officers to infer that he was attempting to evade them but was simply walking away, we disagree. At the sight of the officers' mere presence, Appellant started removing his belongings as he walked backwards from the scene. The officers had no opportunity to speak with Appellant before he attempted to leave the scene in a furtive manner. Appellant continued to back away even after the officers asked him to stop.

Given that the officers had reason to suspect that Appellant was part of a group involved in a multiple vehicle code violations and a near collision, had received a tip that one of those individuals appeared to be armed, and discovered the group within minutes of the tip in a high-crime area, the officers had reasonably concluded that Appellant's evasive behavior justified an investigative stop.[4]

Appellant also argues for the first time on appeal that he was subjected to an unlawful *arrest* unsupported by probable cause when Officer Smalarz drew his weapon as Appellant was backing away. We note that Appellant did not raise this particular theory for the trial court's consideration in his

_____

[4] We recognize that Appellant cites to **Commonwealth v. Hicks**, 652 Pa. 353, 208 A.3d 916 (2019) for the principle that there is "no justification for the notion that a police officer may infer criminal activity merely from an individual's possession of a concealed firearm in public [as] it is not a criminal offense for a license holder … to carry a concealed firearm in public." **Id.** at 386, 208 A.3d at 936. Appellant argues that the officers lacked reasonable suspicion to infer he was involved in criminal activity as he was merely present in a high-crime area and emphasizes that "there is nothing *per se* illegal about having a firearm." Appellant's Brief, at 24.

We are unpersuaded by this argument as the officers in this case would still have been justified to subject Appellant to an investigative detention even if there had been no report of a firearm. The officers had received a reliable and accurate report that Appellant was a part of an ATV group that had nearly struck an off-duty officer's vehicle and ran a stop sign. The officers noted that Chester is currently experiencing a problem with non-registered ATVs riding throughout the city. Officers needed no suspicion to approach Appellant on foot to ask general questions. Before officers could speak a word, their mere presence caused Appellant to evasively back away from them while removing his clothing and belongings. Looking at the totality of the circumstances, the officers' knowledge through the tip and their observations of Appellant acting evasively in a high-crime area gave them reasonable suspicion to detain Appellant for further investigation.

suppression motion, but instead argued that the officers did not have the requisite suspicion to "conduct an investigatory detention." Suppression Motion, 12/15/22, at 2.

It is well-settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Further,

> "[A]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." **Commonwealth v. Little**, 903 A.2d 1269, 1272–73 (Pa.Super. 2006); **Commonwealth v. Thur**, 906 A.2d 552, 566 (Pa.Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression.").

**Commonwealth v. Freeman**, 128 A.3d 1231, 1241 (Pa.Super. 2015).

Even assuming *arguendo* that we were to find that Appellant had properly preserved this issue for review, it would not entitle him to any relief. This Court has held that an officer's decision to draw his firearm during an investigatory stop does not necessarily escalate the encounter into a custodial detention. In **Commonwealth v. Dix**, 207 A.3d 383, 388 (Pa.Super. 2019), this Court upheld the denial of the appellant's suppression motion, finding that the officers' decision to draw their guns to detain the appellant did not render their investigative stop to be a custodial detention. This Court noted that the totality of the circumstances showed that the interaction was not the functional equivalent of an arrest when the officers simply sought to detain the defendant and conduct a brief patdown search. **Id**. at 389. **See also**

***Commonwealth v. Johnson***, 849 A.2d 1236, 1238 (Pa.Super. 2004) (noting that investigative detention was "not made improper because the officers drew their guns").

Likewise, in this case, Officer Smalarz's decision to draw his weapon did not subject Appellant to a custodial detention. The totality of the circumstances indicated that the officers were effectuating an investigative detention when they approached Appellant and his colleague to inquire about the reported traffic violations and Appellant backed away from the scene while taking off his jacket and his satchel. The officers had an obligation to investigate when observing Appellant, in a high crime area, discarding belongings and attempting to evade police presence. As Appellant ignored Officer Smalarz's request to stop and appeared to be concerned about the officers discovering the contents of his bag, Officer Smalarz decided to draw his weapon based on concerns for his own safety given his suspicion that Appellant could have been concealing a firearm within the bag.

For the foregoing reasons, we conclude that the trial court did not err in finding that suppression was not warranted as the officers subjected Appellant to an investigative detention supported by reasonable suspicion. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/24/2025</u>